Derrick Anthony DePASS

v.

The UNITED STATES of America.

Civ. A. No. N–78–2000.

United States District Court,
D. Maryland.

Oct. 16, 1979.

As Amended Dec. 19, 1979.

Robert J. Sher and Ronald B. Bergman, Hyattsville, Md., for plaintiff.

Russell T. Baker, Jr., U. S. Atty., Baltimore, Md., for the District of Maryland, John J. Farley III and Emilia M. DeMeo, Trial Attys., Tort Branch, Civil Division, U. S. Dept. of Justice, Washington, D. C., for defendant.

NORTHROP, Chief Judge.

The plaintiff, Derrick Anthony DePass, brought this suit under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671–2680 and under 42 U.S.C. § 1983. The case concerns the detention of the plaintiff at the Baltimore-Washington International Airport (BWI) on January 6 & 7, 1976 by officers and employees of the United States Immigration and Naturalization Service, the United States Customs Service, the Maryland Aviation Administration, the Maryland Department of Transportation, Eastern Airlines, Inc., and Burns Security, Inc. for the plaintiff's alleged failure to offer satisfactory proof of United States citizenship upon his arrival at BWI from Montego Bay, Jamaica on an Eastern Airlines flight. Plaintiff has asserted claims of false imprisonment and assault and battery against the United States under the FTCA and similar claims against the State of Maryland, Eastern Airlines, and Burns Security under 42 U.S.C. § 1983 and the fourteenth amendment.

By stipulation filed in this Court on March 15, 1979, the plaintiff voluntarily dismissed the United States Immigration and Naturalization Service and the United States Customs Service as defendants; he also reduced his claim of damages against the United States to $25,000 as set forth in his prior administrative claim. In an oral opinion rendered on August 9, 1979, this Court dismissed the suit against the State of Maryland, Eastern Airlines, and Burns Security.

At a hearing on the same date, this Court deferred ruling on the defendant United States' motion to dismiss or, alternatively, motion for summary judgment. This Court directed the United States to provide the Court with an affidavit setting forth the boundaries of the discretion exercised by immigration inspectors, and identifying any objective criteria the inspectors follow in examining claims of United States citizenship similar to that which occurred in the present case. The United States has submitted such an affidavit, and the plaintiff has responded to it. The Court finds the matter ripe for a decision. As an affidavit has been submitted, the matter will be treated as a motion for summary judgment. See Fed.R.Civ.P. 12(b).

The Government contends that the discretionary function exception of the FTCA, 28 U.S.C. § 2680(a), deprives this Court of jurisdiction over the plaintiff's claims of false imprisonment by Immigration Inspector George L. Stump at BWI. The plaintiff contends that the actions of Inspector Stump in detaining him do not fall within the discretionary function exception.

The FTCA represents a limited waiver of the Government's sovereign immunity in tort. One major group of claims excepted from the coverage of the FTCA includes

[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discre-

tionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

■ In construing this exception, the Supreme Court has failed to set clear guidelines to determine when this exception applies. *See Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955); *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). While there is no absolute test to determine when the actions of a governmental official fall within the exception, this Court agrees with the approach of the Fifth Circuit in *Smith v. United States*, 375 F.2d 243 (5th Cir.), *cert. denied*, 389 U.S. 841, 88 S.Ct. 76, 19 L.Ed.2d 106 (1967). The *Smith* court held that any inquiry concerning the applicability of the discretionary function exception must focus on "the nature and quality of the discretion involved in the acts complained of." *Id.* at 246.

■ This Court rejects the "planning level-operational level" test offered by the plaintiff. Under this test, discretionary acts of officials at the planning level of government fall within the discretionary function exception while the discretionary acts of officials at the operational level fall outside the exception. The test focuses on the status of the official. The test is an artificial one. As the Sixth Circuit concluded in *Downs v. United States*, 522 F.2d 990, 997 (6th Cir. 1975), "Congress intended 'discretionary functions' to encompass those activities which entail the formulation of governmental policy, whatever the rank of those so engaged." The court in *Smith, supra* at 246, expressed its dissatisfaction with the planning level-operational level test in the following passage:

> Such a distinction is specious. It may be a makeweight in easy cases where of course it is not needed, but in difficult cases it proves to be another example of a distinction "so finespun and capricious as to be almost incapable of being held in the mind for adequate formulation."

The plaintiff in this case was detained by Immigration Inspector Stump, who was not satisfied from the documentation produced by the plaintiff that he was a United States citizen. Plaintiff argues that Inspector Stump was not vested with broad discretion in determining the citizenship of persons passing through BWI immigration facilities. Plaintiff alleges that Inspector Stump's actions in detaining him, therefore, do not fall within the discretionary function exception.

This Court finds that Inspector Stump was authorized to detain the plaintiff at BWI pursuant to federal statutes and regulations. 8 U.S.C. § 1225(a) provides the following:

> The inspection, other than the physical and mental examination, of aliens . . seeking admission or readmission to or the privilege of passing through the United States shall be conducted by immigration officers . . . . All aliens arriving at ports of the United States shall be examined by one or more immigration officers *at the discretion of the Attorney General and under such regulations as he may prescribe. . . . The Attorney General and any immigration officer . . . shall have power* to administer oaths and to take and consider evidence of or from any person touching the privilege of any alien *or person he believes or suspects to be an alien* to enter, reenter, pass through, or reside in the United States or concerning any matter which is material and relevant to the enforcement of this chapter and the administration of the Service . . . . *Any person coming into the United States may be required* to state under oath the purpose or purposes for which he comes, the length of time he intends to remain in the United States, whether or not he intends to remain in the United States permanently and, if an alien, whether he intends to become a citizen thereof, *and such other items of information as will aid the immigration officer in determining whether he is a national of the United States or an alien* and, if the latter, whether he belongs to any of the excluded classes enumerated in section 1182 of this title. The

Attorney General and any immigration officer . . . shall have power to require by subpena [sic] the attendance and testimony of witnesses before immigration officers and special inquiry officers and the production of books, papers, and documents relating to the privilege of *any person* to enter, reenter, reside in, or pass through the United States or concerning any matter which is material and relevant to the enforcement of this chapter and the administration of the Service, and to that end may invoke the aid of any court of the United States. [emphasis added].

8 C.F.R. § 235.1 reads in pertinent part:
(b) *U.S. citizens.* A person claiming U.S. citizenship *must establish that fact to the examining immigration officer's satisfaction. . . . If an applicant for admission fails to satisfy the examining immigration officer that he is a U.S. citizen, he shall thereafter be inspected as an alien.*

. . . . . .

(d) *Qualifications for aliens.* The following general qualifications and requirements shall be met by an alien seeking to enter the United States regardless of whether he seeks to enter for permanent, indefinite, or temporary stay, and regardless of the purpose for which he seeks to enter: *He shall present whatever documents are required and shall establish to the satisfaction of the immigration officer that he is not subject to exclusion under the immigration laws* [,] Executive orders, or Presidential Proclamations and is entitled under immigration laws and this chapter to enter the United States. [emphasis added].

■ Both 8 U.S.C. § 1225(a) and 8 C.F.R. § 235.1 plainly indicate to this Court that Congress intended that immigration inspectors have broad discretion in determining the citizenship of persons entering the United States. Neither the immigration statutes nor the regulations set forth any concrete tests or standards that an immigration inspector must blindly follow. Instead, the inspector must make an *ad hoc,* subjective evaluation in each case as to whether the person being examined has submitted sufficient proof of his United States citizenship.

The Government has submitted the affidavit of Marvin Gibson, an Assistant Commissioner for Inspections, Immigration and Naturalization Service. Mr. Gibson is responsible for training relating to the Service's inspection programs, including inspections of passengers arriving at U.S. international airports from ports outside of the United States. As such, he is familiar with the duties and responsibilities of immigration inspectors.

Mr. Gibson states that the nature and extent of questioning of persons entering the United States is at the complete and sole discretion of the immigration inspector. No list of questions has ever been prepared by the Service for this purpose. An inspector may be personally satisfied either by oral statements by the person being examined or by documents submitted by that person, or both. No list of items of conclusive proof of United States citizenship, either oral or documentary, has ever been prepared by the Service for use by immigration inspectors. Indeed, as Mr. Gibson avers,

> Even presentation of a United States birth certificate, valid on its face, or a United States passport, valid on its face, does not guarantee admission into the United States because an immigration inspector may determine, through careful questioning, observation, study and judgment, that other circumstances raise doubts as to the bearer's admissibility.

*Affidavit of Marvin Gibson* at ¶ 7. In short, immigration inspectors are not provided with any guidelines delineating items of conclusive proof of citizenship that *must* satisfy an inspector that an individual is in fact a United States citizen.

In his opposition to the Government's motion for summary judgment and in his reply to the Gibson affidavit, plaintiff fails to refute the above-described broad discretion vested in immigration inspectors; he merely makes bald allegations that the inspec-

tors do not have broad discretion. This is not enough to defeat the Government's motion for summary judgment. *See* Fed.R. Civ.P. 56(e).

This is not a case where an official must mechanically follow set, defined guidelines and has no discretion to disregard his own agency's regulations. *See, e. g., Griffin v. United States*, 500 F.2d 1059, 1064–69 (3d Cir. 1974) (no discretion conferred to disregard mandatory regulatory command); *Hoffman v. United States*, 398 F.Supp. 530, 533–39 (E.D.Mich.1975) (FAA regulation presented clear standards to be applied to specific fact situations). Instead, this is a case where an official has broad discretion and few constraints in his decision-making. *See, e. g., First National Bank in Albuquerque v. United States*, 552 F.2d 370, 375–76 (10th Cir. 1977), *cert. denied*, 434 U.S. 835, 98 S.Ct. 122, 54 L.Ed.2d 96 (1978) (discretionary function exception applies where federal statute phrased in terms of general policy standards to be applied by the agency); *Hendry v. United States*, 418 F.2d 774, 783 (2d Cir. 1969) (discretionary function exception applies where governing statute or regulation comtemplates that an official will make new rules or *ad hoc* decisions); *Coastwise Packet Co. v. United States*, 398 F.2d 77, 79–80 (1st Cir.), *cert. denied*, 393 U.S. 937, 89 S.Ct. 300, 21 L.Ed.2d 274 (1968) (certification of schooners involving no single known objective standard is "precisely the sort of discretionary function" exempted under § 2680(a)); *Gray v. United States*, 445 F.Supp. 337, 340–41 (S.D.Tex.1978) (statutory language involving "no particular scientific tests or measuring sticks" is a "direct indicator of the discretionary nature" of agency determinations); *In re Air Crash Disaster Near Silver Plume, Colorado*, 445 F.Supp. 384, 402 (D.Kan.1977) (discretionary function exception applies where decisions must be made on a case-by-case basis, guided only by statements of agency philosophy). This Court therefore finds that the nature and quality of the discretion involved in Inspector Stump's actions bring his conduct within the discretionary function exception to the FTCA.

Furthermore, important foreign policy and political considerations permeate the Immigration Service's decision whether to admit persons into the United States. As the Supreme Court in *Kleindienst v. Mandel*, 408 U.S. 753, 765, 92 S.Ct. 2576, 2583, 33 L.Ed.2d 683 (1972) put it:

[T]he power to exclude aliens is "inherent in sovereignty, necessary for maintaining international relations and defending the country against foreign encroachments and dangers—a power to be exercised exclusively by the political branches of government . . . ."

*Accord, Four Star Aviation, Inc. v. United States*, 409 F.2d 292, 295 (5th Cir. 1969) (discretionary function exception of the FTCA applies to decisions involving the exercise of judgment and discretion with respect to a matter involving our international relations and affecting our foreign policy). Despite the *ad hoc* nature of the inspector's decision, each time an immigration inspector examines someone to determine whether he is a United States citizen, the inspector is in effect setting a policy that affects our international relations and which has social, economic, and political repercussions in this country as well.

The plaintiff argues that summary judgment is inappropriate here because a material fact is in dispute. The allegedly material fact in dispute that plaintiff refers to concerns whether the plaintiff submitted certain documents to Inspector Stump in support of his claim of citizenship. First, as the Government notes in its *Reply to Plaintiff's Memorandum in Opposition to the United States' Motion to Dismiss, or, in the alternative, for Summary Judgment*, at 8 n. 4, there is a serious question under Fed.R. Civ.P. 36(a) whether the plaintiff is deemed to have admitted this fact in the Government's favor by filing an untimely answer to the Government's Requests for Admissions. Assuming, *arguendo*, that Rule 36(a) does not prevent the plaintiff from contesting this fact, the Court does not find it material. In light of the broad discretion vested in Inspector Stump to rely on or to ignore whatever documentation he pleased,

whether the plaintiff actually did present the documentation to Inspector Stump is not material. As plaintiff himself concedes, the discretionary function exception applies even when an official abuses his discretion. 28 U.S.C. § 2680(a); *Scanwell Laboratories, Inc. v. Thomas*, 172 U.S.App.D.C. 281, 521 F.2d 941, 948 (D.C.Cir.1975), *cert. denied*, 425 U.S. 910, 96 S.Ct. 1507, 47 L.Ed.2d 761 (1976).

Plaintiff's claims against the United States of false imprisonment and assault and battery by officials of the Maryland Aviation Police and Eastern Airlines are also barred by the FTCA. Under the FTCA, the United States has consented to be sued only for negligence or wrongful acts or omissions "of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b). Neither the Maryland Aviation Police nor Eastern Airlines officials can be deemed to be federal employees. *See United States v. Orleans*, 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976); *Logue v. United States*, 412 U.S. 521, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973).

As the claims of the plaintiff against the United States are barred by the FTCA, this Court has no jurisdiction over the plaintiff's complaint. Accordingly, by a separate Order, summary judgment will be entered in the defendant's favor.