No. 53,613

WILLIAM F. ROBERTSON, *Appellant,* v. CITY OF TOPEKA, RANDY MILLS, JAMES WECKWERTH, AND CRAIG FOX, *Appellees.*

(644 P.2d 458)

Opinion filed May 8, 1982.

*Fred W. Phelps, Jr.,* of Phelps-Chartered, was on the brief for the appellant.

*Leonard M. Robinson,* deputy city attorney, was on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, C.J.: Plaintiff William F. Robertson appeals from a judgment dismissing a negligence action for failure to state a claim upon which relief can be granted. K.S.A. 60-212(b)(6). Robertson sued the City of Topeka and three officers of the Topeka Police Department for damages sustained to real property he owns in the City of Topeka. He alleges the officers negligently failed to evict a trespasser from the property. The discretionary function exception in the Kansas Tort Claims Act, K.S.A. 1981 Supp. 75-6101 *et seq.,* is implicated.

Whether dismissal pursuant to K.S.A. 60-212(b)(6) was appropriate must be decided from the well-pleaded facts of plaintiff's petition. *Weil & Associates v. Urban Renewal Agency,* 206 Kan. 405, 413, 479 P.2d 875 (1971); *Robertson v. McCune,* 205 Kan. 696, 700, 472 P.2d 215 (1970); *Knight v. Neodesha Police Dept.,* 5 Kan. App. 2d 472, 475, 620 P.2d 837 (1980). For purposes of review, this court assumes the facts pleaded to be true.

Briefly, the petition reveals the following. On March 17, 1980, Leroy Danner was on property owned by the plaintiff at 1628 East Third Street in Topeka. Plaintiff called the police to assist in removing Danner from the property. Officer Mills, Weckwerth, and Fox, defendants in this action, responded to the call. Plaintiff

advised the officers that Danner had no right to be on the property, that he was intoxicated, and that he would most likely burn the house down if he remained. The officers refused to remove Mr. Danner from the premises and directed plaintiff to leave the premises. Approximately fifteen minutes later, the house burned.

After the Board of Commissioners of the City of Topeka denied a claim for reimbursement for fire damage, plaintiff filed this negligence action on November 24, 1980, alleging defendants failed to carry out a duty to protect plaintiff's property. On January 15, 1981, the defendants moved to dismiss for failure to state a claim upon which relief could be granted. In its memorandum decision and order of August 6, 1981, the trial court found the actions of the police officers discretionary and as such exempt from liability under K.S.A. 1981 Supp. 75-6104(d) of the Kansas Tort Claims Act. K.S.A. 1981 Supp. 75-6101 *et seq.* Accordingly, the court sustained the defendants' motion to dismiss. Plaintiff appeals from that order, contending the trial court erred in dismissing the action.

The scope of our review on a motion to dismiss has been stated in the following manner:

"The question for determination is whether in the light most favorable to plaintiff, and with every doubt resolved in plaintiff's favor, the petition states any valid claim for relief. Dismissal is justified only when the allegations of the petition clearly demonstrate plaintiff does not have a claim." *Weil & Associates v. Urban Renewal Agency,* 206 Kan. at 413. Followed in: *Knight v. Neodesha Police Dept.,* 5 Kan. App. 2d at 475.

Even with the advent of notice pleading, it is incumbent upon a person asserting a claim against a public officer to make at least some allegation which, if true, would tend to establish that immunity was not a bar to the claim. *Hendrix v. City of Topeka,* 231 Kan. 113, Syl. ¶ 5, 643 P.2d 129 (1982).

Determination of the issue in this case requires examination of the Kansas Tort Claims Act, K.S.A. 1981 Supp. 75-6101 *et seq.* We will make no attempt to survey the history of governmental immunity in Kansas. Instead, we refer the reader to our past decisions which have been reviewed extensively. See, *e.g., Report on Kansas Legislative Interim Studies to the 1979 Legislature,* filed with the Legislative Coordinating Council December 1978, pp. 269-73; Note, *Governmental Liability: The Kansas Tort Claims Act [or the King Can Do Wrong],* 19 Washburn L.J. 260 (1980); Harley and Wasinger, *Governmental Immunity: Despotic*

*Mantle or Creature of Necessity,* 16 Washburn L.J. 12 (1976); Comment, *Governmental Immunity in Kansas: Prospects for Enlightened Change,* 19 Kan. L. Rev. 211 (1971).

The Kansas Tort Claims Act charts a new course, establishing governmental liability for tort claims as the general rule subject to enumerated exceptions. We would note at the outset, however, that the number of exceptions enumerated in K.S.A. 1981 Supp. 75-6104 indicates there has been no wholesale rejection of immunity by the Kansas Legislature.

K.S.A. 1981 Supp. 75-6103(*a*) states the general rule:

"*Subject to the limitations of this act,* each governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state." (Emphasis added.)

The specific exception to liability relied on by the trial court in dismissing this action is included among exceptions enumerated in K.S.A. 1981 Supp. 75-6104:

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

. . . .

"(*d*) Any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion be abused."

The Federal Tort Claims Act, codified at 28 U.S.C. § 2671 *et seq.,* contains a similar provision at § 2680(*a*):

"The provisions of this chapter and section 1346(b) of this title shall not apply to —

"(a) Any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

Federal cases interpreting that "discretionary function" exception employ a variety of rationales. One federal court surveyed the cases and stated: "Rather than a seamless web . . . we found the law in this area to be a patchwork quilt." *Blessing v. United States,* 447 F. Supp. 1160, 1167 (E.D. Pa. 1978). Extensive footnotes in the *Blessing* opinion detail approaches federal courts have taken in applying the discretionary function exception generally. See also 2 Jayson, Personal Injury, Handling Federal Tort Claims § 249.07 (1978). The more narrow area of claims based on

law enforcement evokes equally varied approaches. See generally Annot., 36 A.L.R. Fed. 240.

*Dalehite v. United States,* 346 U.S. 15, 97 L.Ed. 1427, 73 S.Ct. 956 (1953), the seminal decision interpreting the discretionary function exception of the Federal Tort Claims Act, relied on a planning level-operational level test to determine events leading to an explosion of ammonium nitrate fertilizer fell within the discretionary function. "The decisions held culpable were all responsibly made at a planning rather than operational level and involved considerations more or less important to the practicability of the Government's fertilizer program." 346 U.S. at 42. *Dalehite* was distinguished in *Indian Towing Co. v. United States,* 350 U.S. 61, 100 L.Ed. 48, 76 S.Ct. 122 (1955), a suit to recover damages resulting from the government's alleged negligent operation of a lighthouse. The court held the government exercised discretion in establishing the lighthouse but, once established, there was a duty to maintain it. With the *Indian Towing* opinion the debate was on as to the parameters of the discretionary function exception and the validity of a so-called planning level-operational level test. See 2 Jayson, Personal Injury, Handling Federal Tort Claims § 249.07 (1978).

Another test developed within the federal circuits: "[W]hether the judgments of a Government employee are of 'the nature and quality' which Congress intended to put beyond judicial review." *Downs v. United States,* 522 F.2d 990, 997 (6th Cir. 1975). In *Downs,* the survivors of victims who died in an airplane hijacking alleged an FBI agent's negligence in handling the situation caused the deaths. The government argued the actions of the agent fell within the discretionary function exception. The court noted that "[j]udgment is exercised in almost every human endeavor" (522 F.2d at 995), so that factor alone cannot be determinative of immunity. The court determined the intent of the federal act to be protection at the policy formulation level. 522 F.2d at 996. Since handbook procedures had been developed for use in responding to a hijacking, the agent's actions were not within the discretionary function exception. Other courts have rejected the planning level-operational level test with its primary focus on the employee's status. See, *e.g., Smith v. United States,* 375 F.2d 243 (5th Cir.), *cert. denied* 389 U.S. 841 (1967); *Luizzo v. United States,* 508 F. Supp. 923 (E.D. Mich. 1981); *DePass v. United States,* 479 F. Supp. 373 (D. Md. 1979).

We turn now to interpretation of the discretionary function exception in the Kansas Tort Claims Act. Our review of the federal cases convinces us that it is the nature and quality of the discretion exercised which should be our focus rather than the status of the employee exercising that discretion. In the case at bar, Topeka police officers responding to a call were allegedly negligent in refusing to remove Danner from the plaintiff's property when requested to do so. Assuming the facts alleged in the plaintiff's petition to be true, as we must, the officers had no clear-cut remedy. They were faced with a situation in which, to keep the peace, someone had to be evicted from the property. They exercised their judgment and asked the plaintiff to leave. We believe this to be an exercise of discretion within the discretionary function exception. It would be virtually impossible for police departments to establish specific guidelines designed to anticipate every situation an officer might encounter in the course of his work. Absent such guidelines, police officers should be vested with the necessary discretionary authority to act in a manner which they deem appropriate without the threat of potentially large tort judgments against the city, if not against the officers personally.

It may be vigorously argued that police officers should not direct the owner of real property to leave his premises where a trespasser intrudes on the premises and the police officers are summoned to remove the trespasser. It can be said this interferes with the owner's right to protect his property.

Failure to distinguish between the time frame in which police officers are required to take action and the factual situation presented to the court by a claimant in his petition, as here, could lead to disastrous results. The court is in the position of a Monday-morning quarterback. The *facts* with which the court must deal are *established.* The critical time material to the exercise of judgment by the police officers was at the scene of the incident on March 17, 1980, at 1628 East Third Street in the City of Topeka. At that time Mr. Danner, if intoxicated, was not in a public place. The police officers were required to make a determination of the factual situation within a few minutes without any opportunity to investigate whether the plaintiffs were in fact the owners of the premises or whether Mr. Danner was autho-

rized to be on the premises. In our opinion the legislature did not intend to impose on police officers the obligation to ascertain the true state of the facts within such limited time frame at their peril. The police officers were not required to exercise judgment at their peril. This interpretation of the discretionary function exception in the Kansas Tort Claims Act gives it substance.

Lest our decision be misconstrued as an unwarranted restriction on the general rule imposing liability, we note two other exceptions to liability related to police functions. K.S.A. 1981 Supp. 75-6104 provides as exemptions from liability:

"(c) [E]nforcement of or failure to enforce a law, whether valid or invalid, including, but not limited to, any statute, regulation, ordinance or resolution;

. . . .

"(m) failure to provide, or the method of providing, police or fire protection."

The appellant, citing *Broadhurst Foundation v. New Hope Baptist Society,* 194 Kan. 40, 397 P.2d 360 (1964), urges that because the discretionary function provision is an *exception* to the general rule of liability, it must be construed narrowly. It is true that "ordinarily a strict or narrow interpretation is applied to statutory exceptions," but the *Broadhurst* opinion itself also states "statutes must . . . be construed in their entirety with a view of giving effect to the legislative intent." 194 Kan. at 44. While we have found no legislative history speaking directly to the discretionary function exception, we feel our application of the discretionary function exception to the facts in the case at bar is consistent with other exceptions protective of law enforcement functions.

There is a second reason, grounded in tort law, which made dismissal appropriate in this case. Actionable negligence must be based on a duty owed the plaintiff by the defendant. Prosser, Law of Torts § 30 (4th ed. 1971). It is generally held that the duty of a law enforcement officer to preserve the peace is a duty owed to the public at large, not to a particular individual. *Commercial Union Ins. Co. v. City of Wichita,* 217 Kan. 44, 53, 536 P.2d 54 (1975); 70 Am. Jur. 2d, Sheriffs, Police, and Constables § 54. Absent some special relationship with or specific duty owed an individual, liability will not lie for damages. *Hendrix v. City of Topeka,* 231 Kan. at 120, *Massengill v. Yuma County,* 104 Ariz. 518, 456 P.2d 376 (1969); *Tomlinson v. Pierce,* 178 Cal. App. 2d 112, 2 Cal. Rptr. 700 (1960); *Crouch v. Hall,* _____ Ind. App. _____, 406 N.E.2d 303 (1980).

A special relationship or specific duty has been found to exist when an informant is endangered because of his assistance, *Swanner v. United States,* 309 F. Supp. 1183 (M.D. Ala. 1970), or when one who creates a foreseeable peril, not readily discoverable, fails to warn. *Johnson v. State of California,* 69 Cal. 2d 782, 73 Cal. Rptr. 240, 447 P.2d 352 (1968). No such special relationship or specific duty exists in the case at bar.

The decision of the lower court is affirmed.

FROMME, J., dissenting. The Kansas Tort Claims Act was passed to permit recovery of damages from a governmental entity when damages are "caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state." K.S.A. 1981 Supp. 75-6103. Certain exceptions to this general liability are set forth in 75-6104. In the present case the exception applied to justify dismissal of the petition is found in paragraph (*d*) which relates to acts in performing a discretionary governmental function or duty. The facts alleged in the petition do not in my opinion justify this application.

In passing the tort claims act, the legislature had no intention of extending the mantle of immunity beyond the boundaries of protection previously recognized. Personal liability previously was imposed on police officers who needlessly, maliciously or wantonly injured a person or his property even though they were engaged in a governmental function. *Bradford v. Mahan,* 219 Kan. 450, 454, 548 P.2d 1223 (1976).

An officer who acts outside the scope of his jurisdiction and without authorization of law may thereby render himself amenable to personal liability in a civil suit. 63 Am. Jur. 2d, Public Officers and Employees § 291, p. 801. The Kansas Tort Claims Act was not meant to change that rule of liability.

The dismissal of the present action is under K.S.A. 60-212(*b*)(6) for failure to state in the petition a cause of action upon which recovery may be had. The majority uphold the dismissal by determining under the allegations of the petition the officers were engaged in a discretionary governmental function. I disagree.

According to the allegations of the petition the police acted in excess of their lawful authority. They directed the owner and his wife to leave their own house. They refused to remove another person from the premises who was drunk and was threatening to

burn the plaintiff's house. Fifteen minutes later the house burned. The failure to remove the drunk may have been a discretionary function, but the direction to the owner of the house to leave his own premises without the authority of a court order was not discretionary, it was misconduct. Under the limited allegations of the petition there is nothing to indicate that the police were acting under authority of a warrant or order of a court when they directed the owner to leave his own house. There was nothing alleged which would indicate the plaintiff or his wife were engaged in any unlawful activity which would justify their removal from the premises. There were no allegations of existing danger which might have justified the police in removing them from the premises in the face of impending danger. Under the circumstances alleged, to direct the owner and his wife to leave their own house constitutes willful misconduct by the police. Such misconduct is not in the realm of discretionary governmental action. It is outside the authority of the police and should subject the police to suit for resulting damage. See Annot., Police - Liability for Injury, 60 A.L.R.2d 873.

The scholarly discussion in the majority opinion as to what constitutes a discretionary function, which discussion includes the approval of a federal court's reference to the subject as being a "patchwork quilt," would be more helpful if we knew the full facts in this case and were not limited to the allegations in the petition. In justifying the alleged actions of the police in the present case, this court makes recovery for police misconduct under the tort claims act nearly impossible. From now on all acts of police will be labeled discretionary, and no case of police misconduct can get past the pleading stage.

It might well be if the case were allowed to proceed to discovery, so the facts could be expanded, the situation would be one calling for discretionary action by the police and excepted from liability. However, on a motion to dismiss under K.S.A. 60-212(b)(6) we are not allowed to speculate beyond the facts stated in the petition. In my opinion the facts in the petition indicate police misconduct—removing a lawful owner from his own house without a court order, and without exigent circumstances which would justify police action. I would reverse for further proceedings.

PRAGER and HOLMES, JJ., join in the foregoing dissenting opinion.