(676 P.2d 1300)

No. 55,455

James Caplinger, Sr., and James Caplinger, Jr., *Appellants*, v. Charles R. Carter, III, Thomas Hren, Phil Taliaferro, Fred Howard, and The City of Topeka, *Appellees*.

Opinion filed February 2, 1984.

*Charles D. McAtee* and *Anne L. Baker* of Eidson, Lewis, Porter & Haynes, of Topeka, for appellants.

*Wilburn Dillon, Jr.*, of Topeka, for appellees Charles R. Carter, III, Phil Taliaferro and Thomas Hren.

*Robert E. Duncan, II*, of Topeka, for appellee City of Topeka.

*George E. Erickson, Jr.*, of Topeka, for appellee Fred Howard.

Before SPENCER, P.J., JEROME HARMAN, C.J. Retired, assigned, and STEVEN P. FLOOD, District Judge, assigned.

FLOOD, J.: This is an appeal from the trial court's failure to rule on plaintiffs' (James Caplinger, Sr., and James Caplinger, Jr.) motion to dismiss and the granting of a motion for summary judgment in favor of all defendants.

When summary judgment is challenged on appeal, we must read the record in the light most favorable to the party who defended against the motion. *McAlister v. Atlantic Richfield Co.*, 233 Kan. 252, Syl. ¶ 4, 662 P.2d 1203 (1983). With this in mind, we recite only those facts most favorable to the plaintiffs, as drawn from defendants' uncontroverted statement of facts in their motions.

On September 27, 1979, plaintiffs were passengers in a car driven by Mark Caplinger. After observing Mark Caplinger back into an intersection, Topeka police officers Hren and Smith stopped the car and commenced administering field sobriety tests to the driver.

During this time, Caplinger, Sr., and Caplinger, Jr., exited the car. Caplinger, Sr., was grabbed from behind, thrown to the ground, handcuffed, and dragged to the police car by Officer Hren. Caplinger, Jr., was grabbed from behind, choked, and handcuffed by Officer Carter. Later, in the police car, Officer Carter grabbed Caplinger, Jr., by the neck and pushed his head into a shotgun, causing a cut above the eye.

All three Caplingers were taken to the city police station. While in an elevator going from the first to the second floor, Officer Carter rubbed the head of Caplinger, Jr., against the wall, reopening his cut. After booking, Officer Taliaferro pushed Caplinger, Jr., over three chairs, shoved him against a wall, and struck him numerous times.

After booking, Caplinger, Sr., argued with officers about signing bail for his son Mark. As a result, Officer Taliaferro, with the assistance of another officer, carried him to the elevator, threw him on the floor, and Taliaferro kicked him several times.

The Caplingers testified by deposition that these actions were unprovoked and unjustified. The officers contended that the incidents never happened or were provoked but, because of the summary judgment, we are bound by the Caplingers' version.

In the criminal proceedings, Caplinger, Sr., was convicted of one count of obstruction of official duty in administration of field

sobriety tests, and acquitted of two counts of disorderly conduct. Caplinger, Jr., was convicted of one count of disorderly conduct at the scene of the arrest and acquitted of a charge of obstruction of official duty and a charge of disorderly conduct at the police station.

On September 26, 1980, plaintiffs filed suit in Federal District Court for the District of Kansas, alleging violation of their civil rights under 42 U.S.C. § 1983 (1976), common law battery, and the tort of outrage. They filed for identical relief in Shawnee County District Court on September 29, 1980.

The parties, in their briefs, raise numerous procedural matters which require an examination of the progress of the litigation. As we perceive it, the plaintiffs were attempting to keep both the federal and state actions pending until they were in a position to select the most favorable forum. The defendants were trying to prevent this approach. Such maneuvering usually leads to the problems which developed in this case.

On February 18, 1982, at a pretrial conference in state court, the trial judge set a discovery cutoff of July 15, 1982. At that time, plaintiffs' attorney advised the judge that he would shortly dismiss one of the two actions. Defendants, on March 15, 1982, filed a motion in federal court to force dismissal of the federal action. Plaintiffs then, on March 29, 1982, filed a motion in state court to dismiss the state action. The motion was initially granted, but then rescinded when defendants objected because Officer Hren had a counterclaim against Caplinger, Sr., for injury to his hand. Plaintiffs filed a renewed motion to dismiss on May 28, 1982, in state court. This motion was supplemented by a memorandum on September 10, 1982.

In the meantime, plaintiffs were seeking in federal court to discover personnel files of the involved police officers. Plaintiffs hoped to establish from such files knowledge on the part of the police chief, Fred Howard, and the City of Topeka, of prior conduct of the involved officers which would impose liability on their superior and the City. A federal magistrate granted this discovery, but defendants appealed to the federal district judge who has not yet ruled on this discovery. We do not, of course, have access to the federal court file and our knowledge of the steps taken in federal court comes from the briefs and oral arguments.

Discovery time in state court lapsed July 15, 1982. Defendants filed their motions for summary judgment on August 10, 13, and 16, 1982. Plaintiffs filed a motion to compel discovery on August 17, 1982. On September 30, 1982, the district court granted all defendants' motions for summary judgment. A motion to reconsider was filed October 11, 1982, and denied January 11, 1983. On February 9, 1983, plaintiffs filed their notice of appeal.

Appellees initially challenge the jurisdiction of this court, claiming the motion to reconsider dated October 11, 1982, is a motion for relief from a final judgment under K.S.A. 60-260(*b*). If so, it would not stay the time for filing an appeal under K.S.A. 60-2103(*a*) and the appeal filed on February 9, 1983, is untimely. The motion to reconsider challenged the court's reasoning in the summary judgment decision. The relief sought was obviously a motion to alter or amend judgment under K.S.A. 60-259(*f*). In deciding that a motion for rehearing is in fact a motion to alter or amend judgment, we must look through form to substance. *Ten Eyck v. Harp*, 197 Kan. 529, 533, 419 P.2d 922 (1966). This appeal was timely filed and we have jurisdiction.

Additionally, appellees contend that the doctrine of collateral estoppel should be applied because of the plaintiffs' criminal convictions, to bar any action they now have based upon the defendants' conduct at the scene of the accident. One essential element of collateral estoppel is that the issue to be determined in this suit must actually have been determined and necessary to support the judgment in the prior action. *Williams v. Evans*, 220 Kan. 394, Syl. ¶ 2, 552 P.2d 876 (1976). Underlying the plaintiffs' causes of action in this case is a claim of excessive and unreasonable use of force by the officers in making their arrests. Assuming some evidence of excessive force was introduced in the criminal trials, a finding by the jury that the force used was reasonable would not be necessary to support a conviction of obstruction of official duty or disorderly conduct. In any event, plaintiffs' conduct, as shown by the convictions, would not justify use of excessive force after the arrests had been effected. See *Courtney v. Reeves*, 635 F.2d 326, 329 (5th Cir. 1981). Plaintiffs' claims are not barred by collateral estoppel.

We turn now to appellants' contention that the trial court erred in failing to allow dismissal of plaintiffs' action without prejudice, and in granting summary judgment to all defendants.

Appellants' first motion to dismiss was granted but then reinstated when defendants objected because of Officer Hren's counterclaim. Appellants renewed their motion, but failed to support it with a memorandum or certify it as ready for ruling as required by Shawnee County District Court Rule 3.301.

Appellants finally supported their motion with a memorandum on September 10, 1982, but this was after summary judgment motions had been filed. The trial court never did rule on plaintiffs' second motion to dismiss until the decision on rehearing on January 11, 1983, when the court noted that, because discovery was complete and trial was at hand, there was no reason to sustain the motion.

After an answer has been filed, a plaintiff may not dismiss his action without court approval. K.S.A. 60-241(a)(1). If a counterclaim has been pled, the action cannot be dismissed over the defendant's objection "unless the counterclaim can remain pending for independent adjudication by the court." K.S.A. 60-241(a)(2). Such dismissal is discretionary with the court, but should be allowed unless the defendant will suffer some plain legal prejudice other than the mere prospect of a second lawsuit. *Gideon v. Bo-Mar Homes, Inc.*, 205 Kan. 321, Syl. ¶ 3, 469 P.2d 272 (1970).

The counterclaim of Officer Hren was for battery, seeking actual and punitive damages from James Caplinger, Sr., as a result of allegedly being kicked in the hand. The trial court had jurisdiction over Caplinger, Sr., and Officer Hren, and subject matter jurisdiction over the common law tort. The counterclaim could have remained pending for independent adjudication. In May of 1982, the plaintiffs were trying to elect their forum. Officer Hren had the same choice. The court should have allowed both to exercise this choice.

Where extensive discovery has taken place, the plaintiff has been dilatory, and the case is ready for disposition by summary judgment, the court would not err in denying a motion to dismiss. *Pace v. Southern Express Company*, 409 F.2d 331 (7th Cir. 1969). Since we hold that summary judgment, in part, was not proper and we therefore reverse, we suggest that the trial court on remand consider motions to dismiss again under these principles.

We turn now to the lower court decision granting all defend-

ants summary judgment. Summary judgment should not be entered where the opposing party is proceeding with due diligence with pretrial discovery but has not had an opportunity to complete it. *Timmermeyer v. Brack,* 196 Kan. 481, Syl. ¶ 1, 412 P.2d 984 (1966). In this case, plaintiffs desired access to the personnel files of the defendant officers before deposing these defendants. Plaintiffs hoped these files would reveal other acts of excessive force by defendants, tending to show a pattern known to the City and the police chief. Plaintiffs had knowledge of at least two other lawsuits involving some of the defendants which would give rise to this suspicion. Plaintiffs had pursued this discovery in the federal court action, but had so far been stopped by defendants' objections. This was the basis for plaintiffs' motion to compel additional discovery filed August 17, 1982.

However, plaintiffs had done little discovery in the state court action and had allowed a limitation on discovery set by the court for July 15, 1982, to expire. "The control of discovery is entrusted to the discretion of the trial court." *Commercial Union Ins. Co. v. City of Wichita,* 217 Kan. 44, 55, 536 P.2d 54 (1975). We are not prepared to say that the court abused its discretion in adhering to the discovery limitations established in February of 1982. The summary judgment decision cannot be overturned simply because discovery was incomplete.

Summary judgment was granted all defendants on plaintiffs' third cause of action, alleging the tort of outrage. The tort of outrage has certain threshold requirements which must be determined as a matter of law before the case can be submitted to trial on the facts. Among these is that the plaintiff must suffer mental distress which is extreme and severe. *Roberts v. Saylor,* 230 Kan. 289, 292, 637 P.2d 1175 (1981). Neither Caplinger had sought treatment for mental distress, and no professional witness was prepared to testify in their cases to such a condition. Caplinger, Jr., testified that he was in "total shock" and that he has a continuing fear of police officers. Caplinger, Sr., opined that his son should have psychiatric treatment. At most, the evidence supports anger, resentment and hurt feelings found insufficient in *Roberts v. Saylor.* We agree with the trial court that the threshold requirements were not met and summary judgment should have been granted as to the tort of outrage.

The trial court also granted summary judgment for all defend-

ants on the plaintiffs' first cause of action for violation of their civil rights under 42 U.S.C. § 1983 (1976), and their second cause of action for battery. In this we think the trial court erred.

We reiterate that, for purposes of a motion for summary judgment, we must take the Caplinger testimony concerning what occurred as true and disregard contrary testimony from the officers. In the Caplinger version, they were beaten and kicked, not only during the arrest but at the police station after their release from custody. The attacks were unjustified and unprovoked, and clearly the result of excessive and unreasonable force.

In *King v. Blankenship,* 636 F.2d 70, 72 (4th Cir. 1980), it was said:

"It has been widely held that the unjustified striking, beating, or infliction of bodily harm upon a prisoner by the police or a correctional officer gives rise to liability under 42 U.S.C. § 1983."

Quoting from *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir. 1973), the court went on to say:

" 'In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.' " 636 F.2d at 73.

See generally 60 A.L.R. Fed. 204, 211.

The reasonableness of the force used in making an arrest under all the circumstances is a question for the jury. *Hamilton v. Chaffin,* 506 F.2d 904 (5th Cir. 1975); *Conklin v. Barfield,* 334 F. Supp. 475 (W.D. Mo. 1971).

The trial court reached the conclusion that in this case the force used was not excessive and was taken in good faith with the belief that it was legal. Thus, the court concluded, following *Samuel v. Busnuck,* 423 F. Supp. 99 (D. Md. 1976), that no 1983 violation could exist. In reaching this conclusion, the trial court had to balance the testimony of the officers against that of the Caplingers. On a motion for summary judgment, the court cannot weigh the evidence.

Police Chief Fred Howard and the City of Topeka cannot be liable in a 42 U.S.C. § 1983 (1976) action under the traditional theory of respondeat superior. *Hampton v. Holmesburg Prison*

*Officials,* 546 F.2d 1077 (3d Cir. 1976). However, Fred Howard could be liable if he was aware of a history of complaints against the officers and failed to control his subordinates. *Donaldson v. Hovanec,* 473 F. Supp. 602, 608 (E.D. Pa. 1979). The City cannot be liable unless its knowledge, actual or constructive, of the officer's conduct reveals a pattern of activity amounting to a governmental custom or practice. *Koch v. Schneider,* 550 F. Supp. 846, 852 (N.D. Ill. 1982).

Admittedly, the plaintiffs' evidence concerning the City and Fred Howard is weak, perhaps in part because they cannot get access to the personnel files. In response to defendants' motion for summary judgment, plaintiffs filed an affidavit setting forth two prior lawsuits involving police misconduct in using excessive force against these same officers, which the City had settled. The Caplingers testified to other similar incidents within their knowledge. There are some facts, therefore, on which liability could be established against the City or Howard, and some factual dispute remains on this issue.

Plaintiffs' second cause of action was for battery. The trial court found immunity under the Kansas Tort Claims Act, K.S.A. 1983 Supp. 75-6101 *et seq.* Specifically, the court cited three exceptions from 75-6104, which are as follows:

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

. . . .

"(c) enforcement of or failure to enforce a law, whether valid or invalid, including, but not limited to, any statute, regulation, ordinance or resolution;

"(d) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion be abused;

. . . .

"(m) failure to provide, or the method of providing, police or fire protection."

When this case was decided, the trial court did not have the benefit of the decision of the Supreme Court in *Dauffenbach v. City of Wichita,* 233 Kan. 1028, 667 P.2d 380 (1983). While *Dauffenbach* was a pre-tort claims act case, it is important to note that the court there said:

"It is not the duty of a law enforcement officer to punish a suspect by using unreasonable force or to wantonly or maliciously injure the suspect. A public citizen should be compensated when unreasonable force by a law enforcement officer causes an injury whether the injured party is a pillar of the community, an incoherent drunk or mentally ill." 233 Kan. at 1035.

Since the Kansas Tort Claims Act is "open ended," *Dauffenbach* would establish the rule of liability, absent an exception. The only case decided by our courts construing the Tort Claims Act as it relates to law enforcement is *Robertson v. City of Topeka,* 231 Kan. 358, 644 P.2d 458 (1982).

In *Robertson,* police officers were advised that a trespasser was in a house threatening to burn it down. Instead of arresting the suspect, the officer suggested that the property owner leave, and fifteen minutes later the house burned. The court held that the decision not to arrest was a discretionary function, noting that it was the nature and quality of the discretion which were to be examined, and not the status of the person exercising it. As an independent basis for the decision, the court noted that the duties to keep the peace and to arrest, accordingly, are duties owed to the general public and not to the individual complaining.

*Dauffenbach* would seem to create an individual duty not to act with excessive force. Moreover, it is difficult to conceive the idea that an intentional beating involves any kind of discretion. In *Robertson,* the court looked to the Federal Tort Claims Act for guidance in interpreting the discretionary function in the Kansas Act. 231 Kan. at 360-62. The Federal Act contains a particular exception for intentional torts, including assault and battery, which the Kansas Act does not contain. 28 U.S.C. § 2680(h) (1976).

We do not believe any of the exceptions contained in the Kansas Tort Claims Act were intended to permit police officers to violate the prohibition in *Dauffenbach* that they shall not use unreasonable force.

The trial court's summary judgment for defendants as to the plaintiffs' third cause of action is affirmed. The summary judgment as to plaintiffs' first and second causes of action is reversed and remanded for further proceedings.