9 F.3d 882
 Michael TAYLOR, parent and natural guardian, and surviving
heir at law and co-administrator of the estate; Michael
Andrew Taylor; Jessica Taylor, deceased; Brenda Taylor, as
natural parent and guardian, and as surviving heir and
co-administrator of the estate, Plaintiffs-Appellants,
v.
Paula PHELAN, an individual and a member of the Kansas City,
Missouri, Police Department; Richard Berkely, Arthur D.
Brookfield, II, Beverley Barker Nicks, John L. Williams,
Michael B. Meade, Larry Joiner, individuals and members of
the Kansas City, Missouri, Board of Police Commissioners;
The Kansas City, Missouri, Board of Police Commissioners;
Emanuel Cleaver, William Ray Price, Jr., Bailus M. Tate,
Jacqueline L. Paul, John A. Dillingham, in their official
capacities as members of the Kansas City, Missouri, Board of
Police Commissioners, Defendants-Appellees.
 No. 92-3267.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 16, 1993.
 
 Henry E. Couchman, Jr. (Frank D. Menghini & Douglas M. Greenwald with him on the briefs), of McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, for plaintiffs-appellants.
 J. Emmett Logan of Morrison & Hecker, Kansas City, MO, for defendants-appellees.
 Steve Twist, Kevin M. Cunningham and Richard E. Gardiner, Washington, DC, on the brief, for amicus curiae Nat. Rifle Association's Crimestrike.
 Roy C. Kime, Alexandria, VA, on the brief, for amicus curiae Intern. Assn. of Chiefs of Police.
 Before TACHA, GOODWIN,* and BRORBY, Circuit Judges.
 BRORBY, Circuit Judge.
 
 
 1
 We are asked to decide a question of Kansas law involving the special relationship exception to the rule that police owe no more than a general duty to protect society as a whole. The Taylor family appeals a grant of summary judgment in favor of defendants, Ms. Paula Phelan, a detective of the Kansas City, Missouri, Police Department, and the Kansas City, Missouri, Board of Police Commissioners (Board), finding defendants breached no legal duty. The Taylors argue a duty based on a special relationship existed between Ms. Phelan, the Board and the Taylors, and defendants are not shielded from liability by the Kansas Tort Claims Act. We affirm.
 
 
 2
 The Taylors brought a negligence action against Ms. Phelan, individually, and as a member of the Kansas City, Missouri, Police Department, and against the Board and its members in their official capacities on a respondeat superior theory for the negligence of Ms. Phelan and another detective of the Kansas City, Missouri Police Department.[1] The case was originally filed in the District Court of Wyandotte County, Kansas, but was later removed by defendants to the United States District Court for the District of Kansas. We have jurisdiction under 28 U.S.C. Secs. 1291, 1294(1).
 
 
 3
 Recounting in detail the unfortunate circumstances of this case will accomplish little. Gruesome injuries were inflicted on the Taylor family by Mr. Moore, a distant relative who lived nearby, leading to the death of their daughter and severe physical and emotional harm to the surviving parents and their son. About three weeks prior to the assault, the Taylors contacted and filed reports with Ms. Phelan of the Kansas City, Missouri, Police Department concerning an earlier sexual assault of their daughter by Mr. Moore. Over the following weeks, the Taylors contacted Ms. Phelan, other officers of the Missouri Police Department, District Attorneys in Clay County, Missouri, and officers of the Wyandotte County, Kansas, Sheriff's Department to get advice and information related to the arrest of Mr. Moore. Mr. Moore was to be arrested the day after his final assault on the Taylors.
 
 
 4
 Before the district court, in response to defendants' motion for summary judgment, the Taylors argued three ways in which the defendants established a special relationship over the three week period. First, the Missouri police had a duty to provide additional protection to persons who aid in the apprehension and prosecution of criminals. Second, by assuring the Taylors of their safety pending the arrest, the Missouri police made specific promises justifying reliance by the Taylors. Finally, a special relationship was formed by the affirmative act of a Missouri officer who notified Moore of the warrant for his arrest about one week before the Kansas sheriffs were able to execute the formal Missouri arrest request. In a published Memorandum and Order,[2] the district court granted defendants' motion for summary judgment finding no special relationship between the Missouri police and the Taylors. On appeal, the Taylors reiterate these arguments.[3]
 
 I.
 
 5
 In considering whether summary judgment was appropriate, we examine the plaintiffs' and defendants' versions of the facts for genuine disputes as to material facts. Dispute about a material fact is "genuine" only if the "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Materiality of a fact is determined by substantive law. Id. Despite the tragic elements of this case, we are limited to those facts that might establish a special relationship between the Taylors and the Missouri police. In so doing, we view the " 'record liberally in favor of the party opposing the motion for summary judgment.' "[4] City of Chanute v. Williams Natural Gas Co., 955 F.2d 641, 647 (10th Cir.) (quoting McKenzie v. Mercy Hosp., 854 F.2d 365, 367 (10th Cir.1988)), cert. denied, --- U.S. ----, 113 S.Ct. 96, 121 L.Ed.2d 57 (1992). The district court's decision to grant summary judgment is reviewed de novo. Id.
 
 
 6
 The Taylors first contacted Ms. Phelan on October 22, 1986, when they filed a report complaining of Mr. Moore's sexual assault on their daughter. Ms. Phelan recorded and videotaped an interview with the daughter and secured the issuance of a wanted notice for the arrest of Moore. During their initial conversation with Ms. Phelan, the Taylors understood that an arrest warrant would be forthcoming in a matter of days, although no specific deadline was set.
 
 
 7
 During the week of October 24, 1986, the Taylors repeatedly contacted Ms. Phelan regarding her investigation of Moore and regarding their safety concerns given Moore's nearby residence. In one conversation, Ms. Phelan was asked whether the Taylors should take special precautions pending the arrest, such as removing their children from school. She advised the Taylors to continue their daily routine and not to worry.
 
 
 8
 On October 31, 1986, Ms. Phelan and another detective from the Missouri police came to the Taylors' home in Kansas City, Kansas, to obtain a medical report of the daughter. Again, the Taylors expressed concern with the safety of their children since Moore lived close to their home. Ms. Phelan responded that they were "paranoid" and that everything was being done to investigate the matter and secure an arrest.
 
 
 9
 During the following week, the Taylors regularly contacted Ms. Phelan with worries over the delay in arresting Moore. On November 3, 1986, the Kansas City, Missouri, Police Department's case file was presented to the Clay County Prosecutor's Office, the jurisdiction of the complained sexual assault. On November 7, 1986, the Clay County Circuit Court issued a warrant for the arrest of Moore on sodomy and sexual abuse charges. The same day, Mrs. Taylor contacted a detective of the Kansas City, Missouri, police who informed her of the issued warrant. This detective then telephoned Moore and directed him to turn himself in for arrest at the Missouri Police Department. Moore told the detective he would voluntarily surrender the next day, but Moore failed to do so. The detective took no further action in the matter nor informed other officers of his contact with Moore.
 
 
 10
 Because Moore lived in Kansas, the Missouri police were required to seek assistance from Kansas law enforcement to formally execute his arrest. On November 10th and 11th, Mrs. Taylor again called Ms. Phelan to complain about the delay in arresting Moore. On the latter day, Ms. Phelan confirmed a warrant had been posted on an interstate computerized information system. She then asked the Missouri Fugitive Apprehension Unit to contact Kansas law enforcement personnel. Officers of the Missouri Unit contacted the Wyandotte County Sheriff's Office. On the evening of November 12, 1986, Moore broke into the Taylors' home, attacked them, then committed suicide.
 
 II.
 
 11
 The United States District Court for the District of Kansas, sitting in diversity, examined the Taylors' negligence claims under Kansas law. We review de novo a district court's determination of state law, Salve Regina College v. Russell, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991); Eaton v. Jarvis Prods. Corp., 965 F.2d 922, 925 (10th Cir.1992), and agree Kansas law applies. Federal courts sitting in diversity must apply the substantive law, including choice of law rules, of the state in which they sit. Robert A. Wachsler, Inc. v. Florafax Int'l Inc., 778 F.2d 547, 549 (10th Cir.1985) (citing Klaxon Co. v. Slentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941)). Kansas affirms the rule that where a negligent act originates outside the state, the situs of resulting injury determines the governing law. Ling v. Jan's Liquors, 237 Kan. 629, 703 P.2d 731, 735 (1985). Kansas law governs whether the Missouri defendants are liable for plaintiffs' injuries in Kansas.
 
 
 12
 "A federal court sitting in diversity and applying state law is obligated to follow the pronouncements of that state's highest court." Romero v. International Harvester Co., 979 F.2d 1444, 1449 n. 3 (10th Cir.1992). The essential question before us is whether the conduct of Ms. Phelan and other officers of the Kansas City, Missouri, Police Department created a special duty beyond the general duty police owe to the public at large. "[T]he duty of a law enforcement officer to preserve the peace is a duty owed to the public at large.... Absent some special relationship with or specific duty owed an individual, liability will not lie for damages." Robertson v. City of Topeka, 231 Kan. 358, 644 P.2d 458, 463 (1982) (citations omitted); see Mills v. City of Overland Park, 251 Kan. 434, 837 P.2d 370, 379 (1992).
 
 
 13
 The central case in Kansas on the special relationship exception to the public duty doctrine, and the case on which the district court relied, is Dauffenbach v. City of Wichita, 233 Kan. 1028, 667 P.2d 380 (1983). In Dauffenbach, the Kansas Supreme Court delineated two circumstances in which a special duty arises: "(1) where there is an affirmative act by the officer causing injury; and (2) when a specific promise or representation by the officer is made under circumstances creating justifiable reliance." Id. 667 P.2d at 385.[5] Since the Appellants' second and third arguments fall squarely within the analysis of Dauffenbach, we address these first.
 
 
 14
 The trial court held Kansas law requires a specific promise of protection upon which to base a special duty. "Liability against a police officer may be predicated upon breach of specific promises or representations such as failure to provide promised protection to an informant." Hendrix v. City of Topeka, 231 Kan. 113, 643 P.2d 129, 137 (1982) (emphasis added) (citing Schuster v. City Of New York, 5 N.Y.2d 75, 180 N.Y.S.2d 265, 154 N.E.2d 534 (1958)). The Taylors cannot point to a specific promise of protection made by Ms. Phelan or other officers of the Missouri police. Instead they argue that Ms. Phelan's assurances of safety or lack of danger are "specific promises" sufficient to establish a special relationship. They rely on Schuster, a New York high court decision cited in some Kansas cases. In Schuster, a police informant's survivor alleged police negligence "in heedlessly imparting ... a false impression of safety and lack of danger." 180 N.Y.S.2d at 268, 154 N.E.2d at 536.
 
 
 15
 We read Schuster differently. Although the New York court found a breach of a special duty, it did so on other grounds. "In a situation like the present, government is not merely passive.... They are active in calling upon the citizen for help, and in utilizing his help when it is rendered." Id., 180 N.Y.S.2d at 270, 154 N.E.2d at 538. In return for seeking out assistance, the government is obligated to provide special protection to those who give help. The unique relationship between the desired informant and the police governs the Schuster decision, not the specific promises of safety.
 
 
 16
 We also agree with the trial court that "blanket assurances" do not trigger a special duty under Kansas law. Ms. Phelan advised the Taylors to continue their daily routine and responded to their worries as "paranoid." Ms. Phelan undoubtedly made many similar remarks as the Taylors repeatedly called her over a three week period. In assuring citizens that the worst is not inevitable, however, police do not insure against that potential result. Police regularly make assurances in the course of their jobs. To invoke an exception to the general duty doctrine on similar remarks would virtually swallow the rule. The Taylors cannot succeed on this argument.
 
 
 17
 Appellants' next argument asserts a special relationship on the affirmative act of a Missouri detective who called Moore directly to notify him of his pending arrest. When the detective called Moore and then later failed to follow up, the Taylors argue, the detective contributed to and increased the risk of injury to the Taylors. Hence, under the first Dauffenbach prong, this affirmative act was a cause of their injury.
 
 
 18
 The district court held, and we agree, that Dauffenbach requires the officer to be a direct cause of an injury, and not merely a contributing cause. "Examples of situations [where a duty arises by an officer's affirmative act] are placing an individual under arrest [falsely] or committing an assault." Dauffenbach, 667 P.2d at 385. Cases cited by Dauffenbach and Hendrix do not warrant a broader interpretation. In Bradford v. Mahan, 219 Kan. 450, 548 P.2d 1223 (1976), an injury to the plaintiff's reputation was allegedly caused by false statements made by a police officer in his report of an auto accident investigation. In Gardner v. McDowell, 202 Kan. 705, 451 P.2d 501 (1969), two officers shot and killed an elderly woman during her arrest. Neither case involves a remote causal link between the police and the injured party. Even assuming the Missouri police increased the risk of injury through their actions and inaction, the Taylors do not argue the police directly caused them harm. Breach of a special duty cannot be found on these grounds.
 
 
 19
 Appellants' final argument asks us to expand Kansas law beyond the Dauffenbach two-prong analysis. "In predicting how a state's highest court would rule, federal courts must follow intermediate state court decisions, policies underlying the applicable legal principles, and the doctrinal trends indicated by these policies." Weiss v. United States, 787 F.2d 518, 525 (10th Cir.1986) (citation omitted). The Taylors argue a special duty to provide protection arises when police solicit or compel cooperation from a citizen when the police know or reasonably should know that cooperation endangers the citizen. While it is plausible Kansas courts would adopt a rule akin to its limited form in other states, we find the rule would not apply to the case at hand.
 
 
 20
 Some states recognize a breach of a duty to a specific individual when the police fail to protect a victim who is a member of a special class, such as an informant, an undercover agent who is aware of a specific threat, or a witness summoned by the police to make an identification. See Swanner v. United States, 309 F.Supp. 1183 (M.D.Ala.1970) (undercover agent); Gardner v. Village of Chicago Ridge, 71 Ill.App.2d 373, 219 N.E.2d 147 (1966) (summoned witness), cert. denied, 403 U.S. 919, 91 S.Ct. 2230, 29 L.Ed.2d 696 (1971); Schuster, 154 N.E.2d 534 (informant); see also Joseph T. Bockrath, Annotation, Liability of Municipality or Other Governmental Unit for Failure to Provide Police Protection, 46 ALR3d 1084-1105 (1972 & Supp.1993). Significantly, in these situations the police were not merely passive but actively sought and used the victim's help.
 
 
 21
 Although Kansas courts have considered these authorities in prior cases, we need not decide whether the Kansas Supreme Court would adopt such a rule here. The Taylors have not shown they are part of a special class. Witnessing a crime, complaining about an assailant, and thus becoming a potential victim does not create a special relationship. See Coleman v. Cooper, 89 N.C.App. 188, 366 S.E.2d 2 (1988) (no duty to provide police protection to children killed by their father, who would be witnesses in his sexual abuse prosecution, since police never assured the family that heightened protection would be given). In Robertson v. City of Topeka, 231 Kan. 358, 644 P.2d 458 (1982), the victim called the police to complain about an unwanted drunken man on his property. Mr. Robertson specifically warned the police that the trespasser would burn down the property if not removed. The police did not promise to protect Mr. Robertson's home or take any action, other than advise Mr. Robertson to leave the premises. No special relationship or specific duty was found by the Kansas Supreme Court. Id., 644 P.2d at 463.
 
 
 22
 Similarly, in the case at hand, the Taylors were witnesses to a crime; they complained to the police about a potential continuing threat; and they were exposed to a greater threat of harm. There is insufficient evidence in the record to show Ms. Phalen threatened or compelled the Taylors' involvement. See supra note 4. The Taylors do not allege their involvement was actively solicited by the Missouri police toward an investigation of Moore. Hence, we cannot treat the Taylors as part of a rare class owed a special duty of protection by the police because of their heightened assistance in an investigation or prosecution.
 
 
 23
 Nor are we inclined to form a new rule recognizing a special relationship between the police and citizens who are foreseeably in greater danger when they witness and complain of a crime. At the heart of the general public duty limitation on governmental liability are the same policy concerns as with the scope of sovereign immunity--staggering potential liability borne by the state treasury and undue interference with governmental functions. As a federal court, we are generally reticent to expand state law without clear guidance from its highest court; but where the expansion directly affects state finances and functions, we should take extra care. The Kansas Supreme Court has delineated the scope of governmental duty and immunity in cases like Dauffenbach, Robertson, and Hopkins v. State, 237 Kan. 601, 702 P.2d 311 (1985). We decline to expand the duty of police to protect individuals who witness a crime and seek the arrest of a suspect beyond those cases.
 
 
 24
 Under Kansas law, no special relationship arose between the Taylors and Ms. Phelan or other officers of the Kansas City, Missouri, Police Department. The individual defendants did not breach a special or general duty. Hence, no claim on a theory of negligence or respondeat superior may succeed. The district court properly granted defendants' motion for summary judgment. Accordingly, we AFFIRM.
 
 
 
 *
 The Honorable Alfred T. Goodwin, Senior United States Circuit Judge for the Ninth Circuit, sitting by designation
 
 
 [1]
 The Taylors' original complaint included a federal civil rights claim pursuant to 42 U.S.C. Sec. 1983 that was subsequently abandoned. Plaintiffs do not appeal the grant of summary judgment on the Sec. 1983 claim
 
 
 [2]
 Taylor v. Phelan, 799 F.Supp. 1095 (D.Kan.1992)
 
 
 [3]
 The Taylors also reassert that Ms. Phelan and the Board are not protected by statutory immunity under the Kansas Tort Claims Act. See K.S.A. Secs. 75-6014(c), (d), & (m). Because we agree with the district court's conclusion that an initial duty did not arise, we need not address this subsequent question
 
 
 [4]
 Although we view the record liberally, we are hampered by an inadequate record. In particular, counsel for Appellants alleges a conversation in which Ms. Phelan threatened that the state could take away the Taylors' children if they dropped charges against Moore. Appellants have not designated, in their appendix, sufficient deposition testimony or interrogatory responses to validate this assertion. Nor can we reconstruct this conversation from either Appellees' appendix or the district court's opinion. Where evidentiary materials necessary for considering an issue are not included in the record on appeal, we are unable to rule on that issue. United States v. Vasquez, 985 F.2d 491, 494-95 (10th Cir.1993) (trial transcript); Ewers v. Board of County Comm'rs, 802 F.2d 1242, 1250 (10th Cir.1986) (deposition transcript), cert. denied, 484 U.S. 1008, 108 S.Ct. 704, 98 L.Ed.2d 655 (1988). We thus decline to address Appellants' claim that a greater duty arose from threats by Ms. Phelan compelling the Taylors to cooperate in the investigation and prosecution of Moore
 
 
 [5]
 A strikingly similar analysis is found in the Kansas Supreme Court's review and agreement with a trial court order in Hendrix v. City of Topeka, 231 Kan. 113, 643 P.2d 129, 138 (1982)