Sarah L. **ALLEN**, Plaintiff,

v.

The **BOARD OF COMMISSIONERS OF THE COUNTY OF WYANDOTTE;** Owen L. **Sully; Wyandotte County Sheriff's Department; Joan A. Grogan; Roger C. Riley; Theodore Robinson; State of Kansas; Kansas Board of Regents; University of Kansas; B.D. Harrelson; and Sandy Omtvedt,** Defendants.

Civ. A. No. 90–2059–O.

United States District Court, D. Kansas.

Aug. 2, 1991.

Douglas C. Beach, Beach & Hanson, Overland Park, Kan., for plaintiff.

John M. Duma, Kansas City, Kan., Catherine R. Hutson, Wm. Terry Fitzgerald, Gregory F. Maher, Stephen P. Doherty, Niewald, Waldeck & Brown, Overland Park, Kan., for defendants Owen L. Sully, Wyandotte County Sheriff's Dept., Joan Grogan, Roger Riley and Theodore Robinson.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter comes before the court on the summary judgment motion of defendants Wyandotte County Sheriff's Department, Owen L. Sully, Joan A. Grogan, Roger C. Riley and Theodore Robinson (hereinafter "Sheriff's Department"). Plaintiff Sarah L. Allen (hereinafter "Allen") was allegedly strip searched and incarcerated by the Sheriff's Department after Kansas University police officers charged her with driving on a suspended license and expired tags. Plaintiff contends defendants deprived her of her civil rights in violation of 42 U.S.C. § 1983. Allen also alleges that defendants battered and falsely imprisoned her. In addition, she claims that the Sheriff's Department was negligent. We do not believe that oral argument would be helpful in this case. Plaintiff's request pursuant to Local Rule 206(d) for oral argument will therefore be denied. For the reasons stated below, the court will grant in part the defendants' motion for summary judgment.

## I. STATEMENT OF FACTS

Defendant officers B.D. Harrelson (hereinafter "Harrelson") and Sandra Omtvedt (hereinafter "Omtvedt"), members of the Kansas University Medical Center (hereinafter "KUMC") police department, stopped the driver of a 1985 Ford Mustang on March 11, 1989, at approximately 9:30 p.m. after they observed the expiration of the vehicle's license tag. At the officers' request, the driver, Allen, displayed her license. The state's computer system revealed that plaintiff's driver's license had been suspended. Harrelson and Omtvedt therefore performed a pat-down search, handcuffed plaintiff, and placed her under

arrest. She was then driven to the KUMC police station.

Allen was later transported to the Wyandotte County jail by Harrelson. The jail was in the charge and custody of Sheriff Owen L. Sully (hereinafter "Sully"). Sergeant Roger C. Riley (hereinafter "Riley"), Deputy Theodore Robinson (hereinafter "Robinson"), and Deputy Joan A. Grogan (hereinafter "Grogan") were on duty during Allen's confinement at the jail. After she was escorted to the fifth floor of the jail, plaintiff claims that she was unlawfully detained and subjected to a strip search by defendant Grogan.[1] Grogan, according to plaintiff, ordered her to remove her clothing, exposing her breasts as well as her genitals, buttocks and anus. Allen alleges that the strip search was conducted "in a rude, insolent, abusive, and violent manner." More specifically, plaintiff contends that she was strip searched in a closet at the jail. Allen states that the closet door remained open so anyone outside the closet could observe the strip search taking place. After the strip search, plaintiff was confined with other prisoners while awaiting her release. At approximately 3:00 a.m. on March 12, Allen was released, having been charged with driving on a suspended license and expired tags.

## II. SUMMARY JUDGMENT STANDARDS

In considering a motion for summary judgment, the court must examine all the evidence in a light most favorable to the nonmoving party. *Barber v. General Elec. Co.*, 648 F.2d 1272, 1276 n. 1 (10th Cir. 1981); *Mahomes–Vinson v. United States*, 751 F.Supp. 913, 916 (D.Kan.1990). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genu-

ine issue of material fact exists. Fed. R.Civ.P. 56(c); *Maughan v. S.W. Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir. 1985); *see also* 6 J. Moore, *Moore's Federal Practice* ¶ 56.04 (1990) (court is authorized to examine materials outside complaint to determine whether there is genuine issue of material fact to be tried). If the moving party does not bear the burden of proof, he must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). This burden is met when the moving party identifies those portions of the record which demonstrate the absence of material fact. *Id.* at 323, 106 S.Ct. at 2553; *Deines v. Vermeer Mfg. Co.*, 752 F.Supp. 989, 993 (D.Kan.1990).

Once the moving party meets these requirements, the burden shifts to the party resisting the motion, who "must set forth *specific facts* showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) (emphasis added). It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleading." *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511; *Tersiner v. Union Pac. R.R. Co.*, 740 F.Supp. 1519, 1522–23 (D.Kan.1990).

## III. ALLEGED DEPRIVATION OF RIGHTS

█ The Civil Rights Act of 1871 (hereinafter "the Act") establishes a civil action for the deprivation of federal rights. Plaintiff Allen claims that the Wyandotte County Sheriff's Department, acting under

---

**1.** Plaintiff's counsel has failed to comply with Local Rule 206. Subsection (c) of Local Rule 206 requires the disputed facts contained in memoranda in opposition to motions for summary judgment to be numbered by paragraph. Unless the movant's facts are specifically controverted by the opposing party's statement of facts, the facts set forth in the statement of the movant shall be deemed admitted. *Id.* Fur-

ther, Allen's attorney also failed to append relevant portions of pleadings, depositions, etc. to his memorandum in opposition to defendants' motion for summary judgment. In the present case, defendants did not object to the violation of Rule 206 by Allen's attorney. The court will not hesitate in the future, however, to hold plaintiff's counsel to the strictures of Rule 206.

the color of state law, violated rights guaranteed to her by the Fourth and Fourteenth Amendments.[2] The Act is embodied in 42 U.S.C. § 1983 and provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in the action at law, suit in equity, or other proper proceeding for redress.

Section 1983 does not create substantive rights. Rather, this provision provides a recovery mechanism for the deprivation of federal rights. *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988); *Williams v. Anderson*, 562 F.2d 1081, 1101 (8th Cir.1977). In order to establish a cause of action under section 1983, a plaintiff must allege: (1) the deprivation of a federal right (2) by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920,

1923, 64 L.Ed.2d 572 (1980); *Martinez v. State of Calif.*, 444 U.S. 277, 284, 100 S.Ct. 553, 558, 62 L.Ed.2d 481, *reh'g denied*, 445 U.S. 920, 100 S.Ct. 1285, 63 L.Ed.2d 606 (1980).

## IV. STRIP SEARCH OF PLAINTIFF

■ The Sheriff's Department claims that it was permitted and indeed required by Kansas statutory law to conduct a strip search of Allen.[3] Plaintiff was charged with violating K.S.A. 8–262. Subsection (a)(1) of K.S.A.1989 Supp. 8–262 prohibits any person from driving a motor vehicle on a state highway "at a time when such person's privilege to do so is ... suspended."[4] K.S.A.1989 Supp. 8–2104(a)(2) provides that a person stopped by a law enforcement officer for violation of K.S.A. 8–262 "shall be taken into custody and taken without unnecessary delay before a judge of the district court."[5]

Ordinarily, a person arrested for violation of a traffic offense is not to be strip searched "unless there is probable cause to believe that the individual is concealing a weapon or controlled substance." K.S.A. 22–2521(a).[6] Neither the arresting officers

---

**2.** Plaintiff appears when she refers to the Wyandotte County Sheriff's Department to mean Sheriff Owen L. Sully. Allen makes no distinction between Sheriff Sully acting in his official capacity and the entity of the Sheriff's Department as a whole. Nothing in Kansas statutory or common law imposes liability upon sheriffs' departments for alleged violations of the rights of those detained in county jails. Rather, K.S.A. 19–811 states that the sheriff shall have "charge and custody" of the jail in his or her county and shall be liable for the acts of his or her deputy or jailer. We therefore hold that the "Wyandotte County Sheriff's Department" is an improper party and enter summary judgment in defendants' favor as to any claims against the Sheriff's Department.

**3.** A "strip search" is defined as the removal or rearrangement of "some or all of a person's clothing, by or at the direction of a law enforcement officer, so as to permit a visual inspection of the genitals, buttocks, anus or female breasts of such person." K.S.A. 22–2520(a). Strip searches "are not a novelty, and are often necessary in order to recover contraband or prevent the destruction of incriminating evidence." *United States v. Poe*, 713 F.2d 579, 584 (10th Cir.1983), *cert. denied*, 466 U.S. 936, 104 S.Ct. 1907, 80 L.Ed.2d 456 (1984); *see also United*

*States v. Mendenhall*, 446 U.S. 544, 566, 100 S.Ct. 1870, 1883, 64 L.Ed.2d 497 (DEA agents lawfully stopped traveler changing planes and escorted her to office for strip search of her person), *reh'g denied*, 448 U.S. 908, 100 S.Ct. 3051, 65 L.Ed.2d 1138 (1980); *United States v. Fitzgibbon*, 576 F.2d 279, 284 (10th Cir.) (strip search of appellant by customs officials at airport was lawful), *cert. denied*, 439 U.S. 910, 99 S.Ct. 279, 58 L.Ed.2d 256 (1978); *State v. Ross*, 247 Kan. 191, 193, 795 P.2d 937, 939 (1990) (complete strip search of pretrial detainee at county detention center); *State v. Walker*, 217 Kan. 186, 187, 535 P.2d 924, 926 (1975) (officers conducted strip search before admitting arrestee into jail).

**4.** A person's first conviction under K.S.A. 8–262(a)(1) constitutes a class B misdemeanor. There is no indication that Allen had previously been convicted of driving a motor vehicle on a suspended license.

**5.** K.S.A.1989 Supp. 22–2202(9) defines "custody" as "the restraint of a person pursuant to an arrest or the order of a court or magistrate."

**6.** Any reliance by Allen on K.S.A. 22–2521(a) is misplaced. It is entirely possible that the strip search of plaintiff was a violation of K.S.A. 22–

nor the guards at the jail possessed probable cause to believe that Allen was harboring any contraband or weapons. Subsection (b) of K.S.A. 22–2524 provides, however, that the foregoing provision shall not apply "when a person accused of a crime is, *of necessity,* confined with other prisoners in a jail while awaiting appearance before a magistrate." K.S.A. 22–2524(b) (emphasis added). Defendants note that "[Allen] was, in fact, confined with other prisoners." [7]

■ The Fourth Amendment applies with its fullest vigor against any intrusion of the human body. *Horton v. Goose Creek Indep. School Dist.,* 690 F.2d 470, 478, *reh'g denied,* 693 F.2d 524 (5th Cir. 1982), *cert. denied,* 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983).[8] The test of reasonableness under the Fourth Amendment "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct.

1861, 1884, 60 L.Ed.2d 447 (1979); *Levoy v. Mills,* 788 F.2d 1437, 1439 (10th Cir.1986).[9] A strip search is a substantial intrusion of personal rights. *Cruz v. Finney County, Kan.,* 656 F.Supp. 1001, 1005 (D.Kan.1987); *Shoemaker v. Handel,* 619 F.Supp. 1089, 1101 (D.N.J.1985), *aff'd,* 795 F.2d 1136 (3d Cir.), *cert. denied,* 479 U.S. 986, 107 S.Ct. 577, 93 L.Ed.2d 580 (1986).[10] Strip searches must be conducted with regard for the subject's privacy and be designed to minimize emotional and physical trauma. *United States v. Cameron,* 538 F.2d 254, 258 (9th Cir.1976); *see also* N. Strossen, *The Fourth Amendment in the Balance: Accurately Setting the Scales through the Least Intrusive Alternative Analysis,* 63 N.Y.U.L.Rev. 1173, —— (1988) (strip searches should not be upheld unless government satisfies least intrusive alternative requirement).

■ Whether a person subject to a strip search was confined with other pris-

---

7. Obviously, the alleged strip search conducted by the Sheriff's Department was not a random or unauthorized act. Defendants concede any request that Allen remove her clothing would have been made pursuant to an established state policy and procedure which requires persons who are accused of driving on a suspended license to succumb to a strip search where they are "of necessity, confined with other prisoners." *See* K.S.A.1989 Supp. 8–2104(a)(2); K.S.A.

22–2524(b); *Wyandotte County Sheriff's Office Detention Center Policies and Procedures,* E–150.

8. The Fourth Amendment, as incorporated into the Fourteenth Amendment, provides in pertinent part as follows:

[T]he right of the people to be secured in their persons ... against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause....

It is an established Fourth Amendment principle that "the greater the intrusion, the greater must be the reason for conducting a search." *Levoy v. Mills,* 788 F.2d 1437, 1439 (10th Cir. 1986) (quoting *Blackburn v. Snow,* 771 F.2d 556, 565 (1st Cir.1985)).

9. *See also* L. McIntosh & J. Adams, *Nineteenth Annual Review of Criminal Procedure: Prisoners' Substantive Rights,* 78 Georgetown L.J. 1430, —— (1990) (courts closely scrutinize reasonableness of strip searches by balancing need for search against extent of invasion).

10. Judge Crow noted in the *Cruz* case that strip searches involving the visual inspection of the anal and genital areas are " 'demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission.' " *Mary Beth G. v. City of Chicago, Ill.,* 723 F.2d 1263, 1272 (7th Cir.1983) (quoting *Tinetti v. Wittke,* 479 F.Supp. 486, 491 (E.D.Wis.1979), *aff'd,* 620 F.2d 160 (7th Cir.1980)); *Cruz v. Finney County, Kan., supra,* 656 F.Supp. at 1005 (Crow, J.) (quoting *Tinetti v.*

2521(a). "Section 1983 does not, however, provide a basis for redressing violations of state law, but only for those violations of federal law done under color of state law." *Jones v. City & County of Denver, Colo.,* 854 F.2d 1206, 1209 (10th Cir.1988); *see also Spielman v. Hildebrand,* 873 F.2d 1377, 1385 (10th Cir.1989) (threshold inquiry in § 1983 action is whether any federal right has been violated); *United States v. Lopez,* 777 F.2d 543, 550–51 (10th Cir. 1985) (validity of search and seizure depends on whether officers had probable cause under federal law). It is therefore irrelevant to plaintiff's action for deprivation of civil rights that the deputy conducting the strip search may have violated Kansas statutory law. *See Munz v. City of St. John, Kan.,* 1990 WL 260528, No. 88–1342, slip op. at 1 (D.Kan. Dec. 19, 1990) (violation of K.S.A. 22–2521 does not establish strip search was unconstitutional). The only issue is whether the strip search in the case at bar violated Allen's constitutional right against unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments.

oners or detained alone in a cell is only one factor to consider in judging the constitutionality of the search. *Hill v. Bogans,* 735 F.2d 391, 394 (10th Cir.1984) (citing *Smith v. Montgomery County, Md.,* 547 F.Supp. 592, 598–99 (D.Md.1982)).[11] A court must also consider "the scope of the particular intrusion, the manner in which it is conducted, ... and the place in which it is conducted." *Bell v. Wolfish, supra,* 441 U.S. at 559, 99 S.Ct. at 1884; *Bono v. Saxbe,* 527 F.Supp. 1182, 1185 (S.D.Ill.), *aff'd in part,* 620 F.2d 609 (7th Cir.1980).[12] Any policy permitting strip searches must be tightly drawn to assure that Fourth Amendment rights are not violated. Where the strip search of a person is conducted pursuant to a policy or statute encompassing all arrestees and there is no reason to suspect that the person is harboring drugs, weapons or contraband, the search is arbitrary and purposeless, and thus unconstitutional. *Kennedy v. Los Angeles Police Dep't,* 901 F.2d 702, 715–16 (9th Cir.1989); *Stewart v. Lubbock County, Tex.,* 767 F.2d 153, 156–57 (5th Cir. 1985), *cert. denied,* 475 U.S. 1066, 106 S.Ct. 1378, 89 L.Ed.2d 604 (1986); *Doe v. Calumet City, Ill.,* 754 F.Supp. 1211, 1220–21 (N.D.Ill.1990).

In the present case, the plaintiff was, as the Sheriff's Department describes her, merely a "routine traffic offender." There was no indication that Allen would be harmful or dangerous. She appears to have fully cooperated with the arresting officers who conducted an exterior search of her person and the guards at the jail

who "processed" her. The infraction for which plaintiff was arrested was unrelated to drugs, weapons or predatory conduct. Further, Allen's detention was temporary and unplanned. Defendants have failed to articulate any reasons concerning appearance, demeanor or criminal history to suggest that Allen might have been concealing drugs, weapons or contraband in her brassiere or in her anal or genital areas. Rather, the Sheriff's Department insists that it is required under the law of Kansas to conduct a blanket, across-the-board strip search of all individuals who are "confined with other prisoners."

While the Sheriff's Department appears to have administered Kansas statutory law in such a manner as to violate plaintiff's Fourth Amendment right against unreasonable searches, we will decline to hold K.S.A. 22–2524 unconstitutionally overbroad. Where possible, courts are to interpret legislative enactments so as to avoid raising serious constitutional questions. *See, e.g., Cheek v. United States,* —— U.S. ——, 111 S.Ct. 604, 611, 112 L.Ed.2d 617 (1991); *DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568, 575, 108 S.Ct. 1392, 1397, 99 L.Ed.2d 645 (1988); *see also Arbeitman v. Dist. Court of Vt.,* 522 F.2d 1031, 1034 (2d Cir.1975) (courts are reluctant to strike down statutes where they can be validly applied in substantial number of situations). In the instant case, defendants have failed to show that "by necessity" Allen was confined with other prisoners

---

*Wittke,* 479 F.Supp. 486, 491 (E.D.Wis.1979), *aff'd,* 620 F.2d 160 (7th Cir.1980)).

**11.** The Tenth Circuit concluded in *Hill* that a jail's "desire to maintain security, to avoid charges of discriminatory treatment, and to promote administrative convenience" do not justify routine strip searches of persons detained for minor traffic offenses. *Hill v. Bogans, supra,* 735 F.2d at 394–95; *see also Thompson v. City of Los Angeles, Cal.,* 885 F.2d 1439, 1447 (9th Cir. 1989) (fact that arrestee was placed in contact with general jail population could not by itself justify strip search of arrestee for purposes of civil rights action); *Masters v. Crouch,* 872 F.2d 1248, 1255 (6th Cir.1989) (possibility of contact with other prisoners after alleged arrest for failure to appear for hearing on traffic violations

was not sufficient justification for strip search), *cert. denied,* 493 U.S. 977, 110 S.Ct. 503, 107 L.Ed.2d 506 (1989). The court finds the rationale of *Hill, Thompson,* and *Masters* highly persuasive when the person charged with a minor offense and strip searched simply as a precaution before placing him or her in the general jail population is confined in a facility which has the physical capacity to detain that person in a separate area.

**12.** In *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Supreme Court held that the practice of conducting routine body cavity searches of prisoners following contact visits with persons outside the prison was "reasonable" under the Fourth Amendment. The inmates in *Wolfish,* however, were charged with offenses more serious than mere traffic viola-

while she waited to appear before a magistrate. There is no indication that the Wyandotte County jail did not have the physical capacity and capability to separate "routine traffic offenders" such as plaintiff from the general jail population.[13] The court will therefore deny defendants' summary judgment motion as to Allen's section 1983 claim alleging a strip search in violation of her Fourth and Fourteenth Amendment rights.

## V. DETENTION OF PLAINTIFF

 Allen argues that the length of her detention by the Sheriff's Department was an unreasonable seizure of her person, in violation of the Fourth Amendment.[14] The Fourth Amendment obviously does not protect against all seizures. *See, e.g., United States v. Walsh,* 791 F.2d 811, 814 (10th Cir.1986); *United States v. Espinosa,* 782 F.2d 888, 890 (10th Cir.1986). The essential inquiry when faced with challenges under the Fourth Amendment is whether the seizure was reasonable. *United States v. Chadwick,* 433 U.S. 1, 9, 97 S.Ct. 2476, 2482, 53 L.Ed.2d 538 (1977); *O'Rourke v. City of Norman, Okla.,* 875 F.2d 1465, 1472 (10th Cir.1989), *cert. denied,* 493 U.S. 918, 110 S.Ct. 280, 107 L.Ed.2d 260 (1989); *United States v. Mireles,* 583 F.2d 1115, 1117 (10th Cir.), *cert. denied,* 439 U.S. 936, 99 S.Ct. 332, 58 L.Ed.2d 332 (1978).[15] What is a reasonable seizure depends upon all surrounding circumstances, and the nature of the seizure. *United States v. Montoya*

*de Hernandez,* 473 U.S. 531, 537, 105 S.Ct. 3304, 3308, 87 L.Ed.2d 381 (1985); *United States v. Mireles, supra,* 583 F.2d at 1117.

In the instant case, Allen was detained for approximately five hours from the time of her arrest to the time in which she was released from the jail. Defendants contend that her release was delayed by a disturbance or riot in the jail. While plaintiff's confinement may have been slightly longer than the time in which one charged with a traffic offense would ordinarily be detained under normal circumstances, we conclude that there was nothing unreasonable as to the amount of time in which she was confined to the Wyandotte County jail. The court will therefore grant defendants' summary judgment motion as to any alleged Fourth Amendment violation concerning the duration of Allen's detention.

## VI. ADEQUACY OF STATE REMEDIES

 The Sheriffs' Department argues that plaintiff's cause of action under 42 U.S.C. § 1983 must be dismissed because Allen's state tort claims of false imprisonment, battery, and negligence afford her adequate postdeprivation remedies. We disagree. The availability of a postdeprivation remedy in state court does not preclude relief under section 1983. *Gilmere v. City of Atlanta, Ga.,* 774 F.2d 1495, 1498–99 (11th Cir.1985), *cert. denied,* 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986); *Hicks v. Feeney,* 770 F.2d 375,

---

tions and were being held for substantial pretrial periods. *Id.* at 524, 99 S.Ct. at 1866.

**13.** The court is not merely concluding that defendants violated K.S.A. 22–2521(a). Rather, we are holding that the strip search of any person accused of a traffic offense when there is no showing of the necessity to confine that person with other prisoners constitutes an unreasonable search in violation of Fourth and Fourteenth Amendment rights.

**14.** Allen also appears to argue that her Fourth Amendment rights were violated because the Sheriff's Department failed to possess probable cause before it detained her. Under the Fourth Amendment, the government's interest in detecting and preventing crime are subject to the traditional standards of probable cause. *See, e.g. Torres v. Commonwealth of Puerto Rico,* 442 U.S. 465, 474, 99 S.Ct. 2425, 2431, 61 L.Ed.2d 1 (1979) (generalized urgency of law enforcement

does not justify violation of Fourth Amendment probable cause requirement); *United States v. Lopez,* 777 F.2d 543, 550 (10th Cir.1985) (right to search and validity of seizure do not depend on right to arrest). In the case at bar, however, the Sheriff's Department was not involved in the arrest of plaintiff, and therefore, this defendant cannot be liable for any lack of probable cause. A county jail cannot be charged with the responsibility of screening all suspects who have been arrested by the various police departments throughout the county for the purpose of determining whether probable cause existed for the arrests.

**15.** The essential purpose of the proscription in the Fourth Amendment is to impose a standard of reasonableness upon discretion by government officials, including law enforcement agents, in order to safeguard privacy and security of individuals against arbitrary invasion. *De-*

378–79 (3d Cir.1985); *Anderson v. City of New York*, 611 F.Supp. 481, 491 (S.D.N.Y.1985); *Spell v. McDaniel*, 591 F.Supp. 1090, 1107 (E.D.N.C.1984). Further, as discussed in section VIII of this memorandum, plaintiff is precluded from recovering on her state law tort claims by exceptions to the Kansas Tort Claims Act, K.S.A. 75–6101 *et seq.* Defendants' motion for summary judgment on the ground that plaintiff's state law tort claims afford adequate postdeprivation remedies will be denied by the court.

## VII. QUALIFIED IMMUNITY

In the alternative, the defendants contend that they are entitled to qualified immunity. Qualified immunity is an affirmative defense to be asserted by government officials who are sued for their alleged performance of discretionary functions. *Horwitz v. Colo. Bd. of Medical Examiners*, 822 F.2d 1508, 1512 (10th Cir.), *cert. denied*, 484 U.S. 964, 108 S.Ct. 453, 98 L.Ed.2d 394 (1987). Government officials performing discretionary functions are generally "shielded from liability for civil damages in so far as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Pleasant v. Lovell*, 876 F.2d 787, 794 (10th Cir.1989); *Scott v. City of Overland Park, Kan.*, 595 F.Supp. 520, 523 (D.Kan.1984).

■ Once a defendant raises the defense of qualified immunity, the plaintiff has the burden of coming "forward with facts or allegations to show both that the defendant's alleged conduct violated the law and that the law was clearly established when the violation occurred." *Pueblo Neighborhood Health Centers v. Losa-*

vio, 847 F.2d 642, 646 (10th Cir.1988); *Lutz v. Weld County School Dist.*, 784 F.2d 340, 342–43 (10th Cir.1986).[16] In meeting this burden, the plaintiff must do more than identify in the abstract a clearly established right and allege that the defendant has violated it. *Watson v. City of Kansas City, Kan.*, supra, 857 F.2d at 697; *Pueblo Neighborhood Health Centers v. Losavio*, supra, 847 F.2d at 645. The plaintiff must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited. *Hannula v. City of Lakewood, Colo.*, 907 F.2d 129, 131 (10th Cir.1990).[17]

■ The key to this inquiry is the objective reasonableness of the official's conduct in light of the legal rules that were clearly established at the time the action was taken. *Laidley v. McClain*, 914 F.2d 1386, 1394 (10th Cir.1990); *Melton v. City of Oklahoma City, Okla.*, 879 F.2d 706, 727, *reh'g granted in part*, 888 F.2d 724 (10th Cir.1989). The "objective reasonableness" standard was employed by the *Harlow* court for determining whether an official is entitled to qualified immunity in order to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." *Harlow v. Fitzgerald*, supra, 457 U.S. at 818, 102 S.Ct. at 2738; *Lewis v. City of Fort Collins, Colo.*, 903 F.2d 752, 755 (10th Cir.1990).

### A. Liability of Sully, Riley, and Robinson

■ Plaintiff urges the court to adopt a respondeat superior theory in holding Sheriff Sully, Sergeant Riley and Deputy Robinson liable for the deprivation of her constitutional rights. The Supreme

---

*laware v. Prouse*, 440 U.S. 648, 653–54, 99 S.Ct. 1391, 1395–96, 59 L.Ed.2d 660 (1979).

**16.** Even if plaintiff meets this burden, defendants may nonetheless prevail if they can establish "extraordinary circumstances" and can prove that they neither knew nor should have known of the relevant legal standard. *Harlow v. Fitzgerald*, supra, 457 U.S. at 819, 102 S.Ct. at 2738; *Pleasant v. Lovell*, supra, 876 F.2d at 794.

**17.** The contours of the law must be sufficiently clear that a reasonable official would understand that what he or she is doing violates that law. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Whether the law is clearly established "should be determined in a particularized sense." *Watson v. City of Kansas City, Kan.*, supra, 857 F.2d at 697 (quoting *Garrett v. Rader*. 831 F.2d 202, 204 (10th Cir.1987)).

Court, however, has declined to find liability based on respondeat superior under section 1983. *See, e.g., Daniels v. Williams,* 474 U.S. 327, 334, 106 S.Ct. 662, 666, 88 L.Ed.2d 662 (1986); *Monell v. Dep't of Soc. Serv.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Section 1983 liability must be based on more than the right to control employees. *Smith v. Heath,* 691 F.2d 220, 225 (6th Cir.1982); *Fann v. City of Cleveland, Ohio,* 616 F.Supp. 305, 313–14 (N.D.Ohio 1985). There must be a showing that "the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir.) (citing *Hays v. Jefferson County, Ky.,* 668 F.2d 869, 872–74, *reh'g denied,* 673 F.2d 152 (6th Cir. 1982)), *cert. denied,* 469 U.S. 845, 105 S.Ct. 156, 83 L.Ed.2d 93 (1984). In the present case, there is no indication that Sheriff Sully, Sergeant Riley or Deputy Robinson directly participated in or otherwise encouraged the alleged strip search of Allen. Since there is no competent evidence in the record of any participation or encouragement on the part of defendants Sully, Riley, or Robinson, the court will enter summary judgment in the favor of these defendants.

### B. *Liability of Grogan*

▮ Plaintiff claims that defendant Grogan is not entitled to qualified immunity because her conduct—the strip search of a routine traffic offender—was unreasonable. As noted above, the threshold question in determining whether an official is entitled to qualified immunity is the objective reasonableness of his or her conduct in light of the legal rules that were clearly established at the time the action was taken. *Laidley v. McClain, supra,* 914 F.2d at 1394; *Melton v. City of Oklahoma City, Okla., supra,* 879 F.2d at 727. The law was clearly established at the time of plaintiff's arrest—March 11, 1989—that the strip search of traffic offenders without some level of suspicion that they are harboring drugs, contraband or weapons is *per se* unreasonable. *See, e.g., Mary Beth G. v. City of Chicago, Ill.,* 723 F.2d 1263, 1271–73 (7th Cir.1983) (routine strip search of female misdemeanor offenders by female police personnel was unreasonable); *United States v. Couch,* 688 F.2d 599, 604 (9th Cir.) (strip search permissible only upon showing of reasonable suspicion), *cert. denied,* 459 U.S. 857, 103 S.Ct. 128, 74 L.Ed.2d 110 (1982); *Houlton v. Mohon,* 684 F.Supp. 1407, 1415 (N.D.Tex.1987) (female county employee's strip search of female traffic offender in absence of any suspicion that search would yield weapons or contraband was unreasonable).[18] While Grogan generally denies that the alleged strip search ever took place, she concedes that it would be improper to perform a strip search of a traffic offender.

Defendants maintain that any strip search was justified merely because Allen was "confined with other prisoners." Defendants, however, have failed to present any evidence that Grogan reasonably suspected plaintiff was hiding drugs, contraband or a weapon on her person. Accordingly, we must conclude that Grogan's alleged strip search of Allen was unreasonable within the meaning of the Fourth Amendment because Grogan did not possess reasonable suspicion and defendants have failed to show that "by necessity" Allen was confined with other prisoners while she waited to appear before a magistrate. In other words, there is no indication that the Wyandotte County jail did not have the physical capacity and capability to separate "routine traffic offenders" such as plaintiff from the general jail population. Defendants' summary judgment motion as to the qualified immunity of Grogan

---

18. *See also* Project, *Nineteenth Annual Review of Criminal Procedure: Warrantless Searches and Seizures,* 78 Georgetown L.J. 718, —— (1990) (strip search of person arrested for misdemeanor or other minor offense justified only when particularized suspicion exists that person is concealing contraband); A. Loewy, *The Fourth Amendment as a Device for Protecting the Innocent,* 81 Mich.L.Rev. 1229, —— (1983) (properly construed Fourth Amendment should forbid strip searches in absence of probable cause).

will be denied by the court.[19]

## VIII. KANSAS TORT CLAIMS ACT

Allen has asserted pendent state law claims of battery, false imprisonment, negligence, and negligence *per se*. Defendants contend that plaintiff is precluded from recovering on these claims by the Kansas Tort Claims Act (hereinafter "KTCA"), K.S.A. 75–6101, *et seq*. The KTCA takes an open-ended approach to governmental liability. Under the Act, governmental entities are generally liable for damages caused by the negligent or wrongful acts and omissions of their employees while they are acting within the scope of their employment. K.S.A. 75–6103(a); *see generally* Note, *Governmental Liability: The Kansas Tort Claims Act [or the King Can Do Wrong]*, 19 Washburn L.J. 260 (1980).[20] In other words, "liability is the rule while immunity the exception." *Dougan v. Rossville Drainage Dist.*, 243 Kan. 315, 318, 757 P.2d 272, 275 (1988); *Mid Am. Credit Union v. Bd. of County Comm'rs of Sedgwick County, Kan.*, 15 Kan.App.2d 216, 219–20, 806 P.2d 479, 482 (1991). Ordinarily, a strict or narrow interpretation must be applied to statutory exceptions. *Barber v. Williams*, 244 Kan. 318, 320, 767 P.2d 1284, 1287 (1989).

▆▆▆▆ Law enforcement officers owe a duty to the public at large to use reasonable and ordinary care and diligence in exercising their duties, to use their best judgment, and to exercise that reasonable degree of learning, skill and experience which is ordinarily possessed by other law enforcement officers in the same or similar locations. *Shaw v. City of Olathe, Kan.*, 1990 WL 182366, No. 88–2353–O, slip op. at 19 (D.Kan. Oct. 16, 1990). Police officers who act maliciously, or wantonly fail to exercise the care and diligence required of officers, are not afforded protection by the KTCA. *Id.; Hopkins v. State*, 237 Kan. 601, 611, 702 P.2d 311, 319 (1985). In determining whether an officers' conduct is protected by the Tort Claims Act, the court must consider the totality of circumstances. *Hopkins v. State, supra*, 237 Kan. at 611, 702 P.2d at 319.

### A. *Battery and Negligence per se as to Strip Search*

▆▆▆▆ In the case at bar, plaintiff claims that defendants' strip search of her constituted battery[21] and negligence *per se*.[22] Defendants contend that the discretionary function exception of the KTCA relieves them from liability on these two state law tort claims. The discretionary function exception of the KTCA provides in pertinent part as follows:

> A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from ... any claim based upon the exercise or performance or the

---

19. Since plaintiff's § 1983 claim has survived summary judgment in part, the court will not address defendants' argument as to pendent jurisdiction.

20. A "governmental entity" is defined as a "state or municipality." K.S.A. 75–6102(c). An "employee" includes "any ... elected or appointed officials and persons acting on behalf or in service of a governmental entity in any official capacity, whether with or without compensation." K.S.A. 75–6102(d).

21. A "battery" is the "unprivileged touching or striking of one person by another, done with the intent of bringing about either a contact or an apprehension of contact, that is harmful or offensive." *Pattern Instructions for Kansas*, § 14.02 (2d ed. 1977) (citing 6 Am.Jur.2d, *Assault and Battery*, § 5 (1963)). An intent to injure is a prerequisite in battery cases. *Murray*

*v. Modoc State Bank*, 181 Kan. 642, 646, 313 P.2d 304, 307 (1957).

22. Negligence *per se* consists of the breach of a duty imposed by a specific requirement of law. *Plains Transp. of Kan., Inc. v. King*, 224 Kan. 17, 25, 578 P.2d 1095, 1101 (1978); *Noland v. Sears, Roebuck & Co.*, 207 Kan. 72, 74–75, 483 P.2d 1029, 1032 (1971). The distinction between "negligence" and "negligence *per se*" is the means and method of ascertainment, in that the former must be found by the factfinder from the evidence, while the latter results from violation of a statute, ordinance or regulation; and the only fact for the determination of the factfinder is the commission or omission of the specific act prohibited or required. *Watkins v. Hartsock*, 245 Kan. 756, 761, 783 P.2d 1293, 1297 (1989) (citing *Kendrick v. Atchinson, Topeka & Santa Fe R.R. Co.*, 182 Kan. 249, 258–59, 320 P.2d 1061, 1070 (1958)).

failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of the discretion involved ...

K.S.A. 75–6104(e). The discretionary function exception does not grant absolute immunity. *Beck v. Kan. Adult Auth.*, 241 Kan. 13, 22, 735 P.2d 222, 233 (1987). The burden rests upon defendant to establish governmental immunity. *Haehn v. City of Hoisington, Kan.*, 702 F.Supp. 1526, 1533 (D.Kan.1988); *Jackson v. City of Kansas City, Kan.*, 235 Kan. 278, 286, 680 P.2d 877, 886 (1984).

■ "Discretion" has been defined as "the power and the privilege to act unhampered by legal rule." *Dougan v. Rossville Drainage Dist., supra,* 243 Kan. at 323, 757 P.2d at 277. It is also defined as the capacity to distinguish between "what is right and wrong, lawful or unlawful, wise or foolish, sufficiently to render one amenable and responsible for his acts." *Black's Law Dictionary* 419 (5th ed. 1979).

Discretion implies the exercise of discriminating judgment within the bounds of reason. *Sanford v. Smith,* 11 Cal. App.3d 991, 1000, 90 Cal.Rptr. 256[, 261] (1970). It involves the choice of exercising of the will, of determination made between competing and sometimes conflicting considerations. Discretion imparts that a choice of action is determined, and that action should be taken with reason and good conscience in the interest of protecting the rights of all parties and serving the ends of justice.

*Hopkins v. State,* 237 Kan. 601, 610, 702 P.2d 311, 318 (1985). In determining whether a government employee performed a discretionary function, the court must focus on the "nature and quality" of the

discretion rather than the status of the employee exercising that discretion. *Jackson v. City of Kansas City, Kan., supra,* 235 Kan. at 289, 680 P.2d at 888 (1984); *Robertson v. City of Topeka, Kan.,* 231 Kan. 358, 362, 644 P.2d 458, 462 (1982).[23]

Allen alleges that defendants did not exercise discretion in conducting the strip search, but acted pursuant to Wyandotte County Sheriff's Department policies and procedures. The first paragraph of defendants' search policy states that all searches at the county's detention center shall be conducted pursuant to Kansas statutory law. More specifically, paragraph 3(a)(1) adds that strip searches of incoming detainees will be performed "in accordance with Kansas statutes." K.S.A. 22–2524 governs the administration of strip searches. The statute specifically *permits* the strip search of a person accused of a crime when that person "is, of necessity, confined with other prisoners." K.S.A. 22–2524(b). This Kansas statute, however, did not require that the defendant officers conduct a strip search of Allen. In other words, even when it is necessary to confine a person charged with violating K.S.A. 8–262 with other prisoners, the decision of whether to conduct a strip search of that traffic offender remains within the sole discretion of the law enforcement officer. We therefore conclude that the decision to strip search plaintiff was a discretionary function. Accordingly, the court will enter summary judgment on plaintiff's pendent state law claims of battery and negligence *per se* as to the alleged strip search.

### B. *False and Negligent Imprisonment*

■ Allen alleges that the Sheriff's Department falsely imprisoned and unlawfully detained her at the Wyandotte County Detention Center.[24] Plaintiff also claims

---

**23.** The premier case on K.S.A. 75–6104(e) is *Robertson v. City of Topeka, Kan.,* 231 Kan. 358, 644 P.2d 458 (1982), wherein the court rejected the planning level-operational level test of the Federal Tort Claims Act discretionary function exception, 28 U.S.C. § 2680(a), in favor of the nature and quality of the discretion exercise test. *Robertson, supra,* 231 Kan. at 362, 644 P.2d at 462. In reviewing federal decisions, the *Robertson* court was particularly impressed

with *Downs v. United States,* 522 F.2d 990 (6th Cir.1975), wherein the Sixth Circuit concluded that it is not the mere exercise of judgment "which immunizes the United States from liability for the torts of its employees." *Id.* at 995.

**24.** False imprisonment consists of the illegal restraint of one person's liberty by the act of another person. *Holland v. Lutz,* 194 Kan. 712,

that Sergeant Riley and Officer Robinson negligently and carelessly allowed her to be detained at the jail.[25] The Sheriff's Department maintains that it is protected by the "enforcement of law" exception to the KTCA, K.S.A. 75–6104(c). Subsection (c) of K.S.A. 75–6104 provides governmental entities and government employees acting within the scope of their employment with immunity for "enforcement of or failure to enforce a law, whether valid or invalid, including, but not limited to, any statute, regulation, ordinance or resolution." If the actions of a government entity or employee are outside the purview of the statute, regulation, ordinance or resolution, however, the exception contained in K.S.A. 75–6104(c) is inapplicable. *Jackson v. City of Kansas City, Kan., supra,* 235 Kan. at 285, 680 P.2d at 885.

In the instant action, defendants merely placed plaintiff in custody pursuant to Kansas statutory law. KUMC police arrested Allen for driving on a suspended license in violation of K.S.A. 8–262(a)(1). K.S.A.1989 Supp. 8–2104(a)(2) provides that a person stopped by a law enforcement officer for violation of K.S.A. 8–262 "shall be taken into custody and taken without necessary delay before a judge of the district court." There is no evidence that defendants acted outside the scope or purview of Kansas statutory law. We have no trouble concluding that the defendant Sheriff's Department was enforcing state law by placing plaintiff in custody. Accordingly, the court will grant defendants' summary judgment motion as to Allen's claims of false and negligent imprisonment.

## C. *Negligent Training, Supervision and Adoption of Policies*

Allen alleges that the Sheriff's Department was negligent in its provision of training and supervision to deputies. Plaintiff also claims that defendants "negligently ... failed to adopt policies, procedures, rules, guidelines and regulations which would have reduced the likelihood of or prevented the occurrence of said unlawful detainment, imprisonment, and strip search of plaintiff." [26] The Sheriff's Department contends that the "police protection" exception to the KTCA, K.S.A. 75–6104(n), precludes plaintiff from recovering on her negligence claims. Subsection (n) of K.S.A. 75–6104 provides that governmental entities and employees acting within the scope of their employment shall not be liable for the "failure to provide, or the method of providing, police ... protection." [27]

There is no question that the Sheriff's Department was providing "police protection" by taking Allen into its custody. Under Kansas statutory law, the term "law enforcement officer" includes "wardens, superintendents, directors, security personnel, and keepers of prisons, penitentiaries, jails and other institutions for the detention of persons accused or convicted of crime." K.S.A. 22–2202(13).

The operation of a penal institution is carried on pursuant to the police power of the state, and the institution itself provides *police protection* for all Kansas residents by keeping apart from the rest of the population those convicted felony

---

714, 401 P.2d 1015, 1018 (1965) (citing 22 Am. Jur., *False Imprisonment,* §§ 2, 3 (1967)).

25. Negligence consists of the failure to exercise that degree of care and vigilance for interests of another which is rightly required under the prevailing circumstances. *Chaplin v. Gas Serv. Co.,* 194 Kan. 26, 29, 397 P.2d 317, 319 (1964) (quoting *Blackmore v. Auer,* 187 Kan. 434, 440, 357 P.2d 765, 770 (1960)).

26. The Supreme Court of Kansas has noted on several occasions that "it would be virtually impossible for police departments to establish specific guidelines designed to anticipate every situation an officer might encounter in the course of his [or her] work." *See, e.g. Mendoza v. Reno County, Kan.,* 235 Kan. 692, 694, 681 P.2d 676, 678 (1984); *Robertson v. City of Topeka, Kan., supra,* 231 Kan. at 362, 644 P.2d at 462. We believe that it would be equally difficult for penitentiaries, jails and other institutions that detain persons accused and convicted of crime to create guidelines that cover every occurrence personnel may confront in those facilities.

27. *See also Beck v. Kan. Adult Auth.,* 241 Kan. 13, 24, 735 P.2d 222, 231 (1987) (University of Kansas Medical Center not liable for method of providing police protection).

offenders whose actions have been and perhaps promise to be dangerous and inimical to society.

*Cansler v. State*, 234 Kan. 554, 571, 675 P.2d 57, 70 (1984) (emphasis added); *see also Jackson v. City of Kansas City, Kan.*, *supra*, 235 Kan. at 292, 680 P.2d at 890 (subsection (m) is aimed at such basic matters as the type and number of police cars; how many personnel might be required; and the selection of equipment options). We are of the opinion that the provision of training and supervision as well as the adoption of policies and procedures are covered by the police protection exception to the Kansas Tort Claims Act.[28] Accordingly, the court will enter summary judgment for defendants on plaintiff's claims of negligence.

## IX. RECOVERY OF PUNITIVE DAMAGES

■ Defendants move for summary judgment on Allen's requests for punitive damages in Counts II, III, and IV. The Sheriff's Department directs the court's attention to subsection (c) of K.S.A. 75–6105, which states:

A governmental entity shall not be liable for punitive damages or exemplary damages or for interest prior to judgment. An employee acting within the scope of the employee's employment shall not be liable for punitive or exemplary damages or for interest prior to judgment, except for any act or omission of the employee because of actual fraud or actual malice.

*See also Polson v. Davis*, 635 F.Supp. 1130, 1153 (D.Kan.1986) (Kansas Tort Claims Act precluded recovery of punitive damages

from city); *Lantz v. City of Lawrence, Kan.*, 232 Kan. 492, 499, 657 P.2d 539, 545 (1983) (employee whose acts are exempted by statute not liable for punitive damages). There is no indication that the Sheriff's Department engaged in fraud or malice. Accordingly, the court will grant defendants' summary judgment motion as to plaintiff's request for punitive damages on her state law tort claims.[29]

IT IS THEREFORE ORDERED that the summary judgment motion of defendants as to plaintiff's claim that the duration of her detainment constituted an unreasonable seizure in violation of the Fourth Amendment (Doc. No. 51) is hereby granted.

IT IS FURTHER ORDERED that defendants' motion for summary judgment as to all claims against the "Wyandotte County Sheriff's Department" as an entity (Doc. No. 51) is granted.

IT IS FURTHER ORDERED that the summary judgment motion of defendants Sully, Riley, and Robinson as to plaintiff's remaining claim under 42 U.S.C. § 1983 (Doc. No. 51) is granted.

IT IS FURTHER ORDERED that defendants' motion for summary judgment as to plaintiff's common law claims of battery, false imprisonment, negligent imprisonment, negligence *per se*, and negligent training, supervision, and adoption of policies (Doc. No. 51) is granted.

IT IS FURTHER ORDERED that defendants' summary judgment motion as to plaintiff's request for punitive damages in Counts II, III, and IV (Doc. No. 51) is granted.

*Commercial Union Ins. Co. v. City of Wichita, Kan.*, 217 Kan. 44, 53, 536 P.2d 54, 63 (1975).

---

**28.** In a negligence action, the plaintiff must establish a duty of reasonable care owed by the defendant to the plaintiff, a breach of that duty, damage to the plaintiff, and a causal connection between the duty breached and the damage sustained. *Tersiner v. Union Pac. R.R. Co.*, 740 F.Supp. 1519, 1524 (D.Kan.1990); *Durflinger v. Artiles*, 234 Kan. 484, 488, 673 P.2d 86, 91 (1983). Summary judgment is also appropriate in this case because plaintiff has failed to prove a duty owed to her by the Sheriff's Department on which actionable negligence will lie. As a general rule, law enforcement officers owe a duty to the public as a whole, not to individuals.

**29.** Defendants also argue that plaintiff may not recover punitive damages under 42 U.S.C. § 1983 in Count I of the First Amended Complaint. The issue of punitive damages under the Civil Rights Act of 1871 has already been resolved. The court previously dismissed Allen's request for punitive damages against *all* defendants. *See Allen v. Bd. of County Comm'rs of the County of Wyandotte, Kan.*, No. 90–2059–O, slip op. at 9–11, 1990 WL 254978 (D.Kan. Dec. 7, 1990).

IT IS FURTHER ORDERED that plaintiff's motion pursuant to Local Rule 206(d) for oral argument on defendants' summary judgment motion (Doc. No. 61) is denied.

IT IS FURTHER ORDERED that the motion of defendants (Doc. No. 51) for summary judgment is hereby denied as to plaintiff's section 1983 claim against defendant Joan A. Grogan, alleging a strip search conducted under color of state law deprived plaintiff of her Fourth and Fourteenth Amendment rights to be secure in her person against unreasonable searches.