**Eugene T. TOMRELL, Plaintiff,**

v.

**LEAVENWORTH COUNTY, KANSAS, John Duncanson and Larry Morris, Defendants.**

No. 93–2307–KHV.

United States District Court, D. Kansas.

Feb. 17, 1994.

Marc S. Birnbaum, Thomas F. Sullivan, Lenexa, KS, for plaintiff.

James S. Pigg, Kurt A. Level, Fisher, Patterson, Sayler & Smith, Topeka, KS, for defendants.

### MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter comes before the Court on defendants' *Motion to Dismiss* (Doc. # 16) filed September 20, 1993; plaintiff's *Motion for Summary Judgment* (Doc. # 36) filed January 3, 1994; and defendants' *Motion for Summary Judgment* (Doc. # 46) filed January 5, 1994. Because the motions for summary judgment more fully develop the parties' legal and factual contentions, the Court need not address the merits of defendants' motion to dismiss and it therefore is overruled.

*Background*

In July, 1992, plaintiff Eugene Tomrell was a police officer with the City of Leavenworth, Kansas, Police Department ("LPD"). Defendant Larry Morris was a law enforcement officer with the Leavenworth County Sheriff's Department ("Sheriff's Department"). Defendant John Duncanson was a Lieutenant with the Sheriff's Department, overseeing the day-to-day operations of the Leavenworth County Jail ("County Jail"). Morris and Duncanson were agents of defendant Leavenworth County.

On July 18, 1992, Officer Brian Anderson of the LPD arrested James Robinson on a bench warrant. After a temporary stop at the LPD station, Officer Anderson took Rob-

inson to the County Jail. Because the City has only two temporary holding cells and lacks suitable facilities for long-term incarceration, the City takes its prisoners to the County Jail once they have been booked.[1]

Officer Kurt Reichard of the Sheriff's Department booked Robinson into the County Jail at approximately 5:30 p.m. At that time, Reichard and Officer Rogers (also of the Sheriff's Department) noted that Robinson was acting strangely—biting at imaginary flies and talking to imaginary people—and that other inmates in the "A Tank" had demanded that Robinson be removed. Robinson also stated that he had been drinking and that he had not been taking his lithium.

Reichard and Rogers put Robinson in the County Jail's only holding cell. They then called Corporal Smith of the LPD, asking that Smith either arrange medical attention for Robinson or release him on a personal recognizance ("PR") bond. Soon thereafter, Smith called back to say that the Municipal Judge for the City of Leavenworth, David VanParys, would not authorize a PR bond if Robinson was crazy. Smith also said that in his opinion, Robinson did not need medical assistance because he was faking mental illness in order to get out of jail. At this point, the dispute reached certain supervisory officers, including LPD watch commander Lieutenant Spezia and Lieutenant Sheriff Duncanson. Ultimately, however, Smith arranged for Dave Rulan of the Northeast Kansas Mental Health & Guidance Center to contact the County Jail. Rulan discussed Robinson's behavior with Reichard and, based on that conversation, believed that Robinson might be experiencing "delerium tremens" ("DT's"). Rulan therefore arranged for Robinson to be examined at the Veteran's Administration ("VA") Hospital in Leavenworth.

Duncanson instructed Reichard and Rogers to tell the LPD that Robinson would not be allowed back into the County Jail until he received proper medical and mental care. Reichard then called the LPD to arrange for Robinson's transportation to the VA Hospital. Although all prisoners at the County Jail are under the care of the County, the psychological needs of city prisoners are the responsibility of the City, and it was the custom and practice for the City to arrange for medical and psychological treatment of City prisoners housed at the County Jail. At around 11:15 p.m., LPD Sergeant David Hawley instructed plaintiff Tomrell to go to the County Jail, take Robinson to the VA Hospital, and see if he could get Robinson admitted there. Tomrell assumed custody of Robinson at approximately 11:30 p.m., took him for an examination at the VA Hospital, and returned with him to the County Jail at approximately 12:40 a.m. on July 19, 1992.

Tomrell presented the prisoner to Sheriff's Department Officer Morris, who refused either to accept Robinson or to permit Tomrell to leave without him. According to Morris, he made this decision because Tomrell told him that the VA Hospital would not admit Robinson because he would not take his medication.[2] According to Tomrell, however, he repeated to Morris what the VA physician had told him—that there was no reason that Robinson could not be returned to the County Jail. In either case, Morris told Tomrell that the County Jail would accept Robinson only when Tomrell could show that Robinson had received a proper mental evaluation.

As noted above, Morris refused to let Tomrell leave the County Jail without Robinson. Tomrell therefore called his supervisor, Sergeant Hawley, for instructions. Hawley ordered Tomrell not to leave the County Jail *with* Robinson. At some point, Hawley came to the County Jail and demanded that Tomrell be permitted to leave. Morris informed Hawley that the health and safety of Robinson and the other inmates required that Robinson be accepted only upon a sufficient

---

1. By statute, county jails are required to receive and care for city prisoners. Kan.Stat.Ann. § 19-1930(a) (Supp.1992). Since 1965, the City of Leavenworth and Leavenworth County have entered into written agreements specifying the amount that the City will reimburse the County for receiving and caring for the City's prisoners.

2. The log book contained a reference to Robinson's earlier statement that he had been drinking and that he had not been taking his lithium. Thus, Morris interpreted Tomrell's statement to mean that the VA Hospital would not admit Robinson because he refused to take his lithium.

showing that he had been properly evaluated. Accordingly, Morris told Hawley that Tomrell could not leave without Robinson as long as Robinson was in Tomrell's custody.

Defendants admit that they would not permit Tomrell to leave without Robinson and that the doors to the County Jail were electronically locked. It is uncontroverted, however, that Tomrell was not under arrest. Furthermore, while the parties dispute whether Tomrell asked to leave after being first told that he could not leave without Robinson, they agree that defendants did not threaten Tomrell in any way. In the end, Tomrell remained at the County Jail until approximately 2:30 a.m., when Judge Van-Parys released Robinson on a PR bond.

Tomrell filed suit against Morris, Duncanson, and Leavenworth County, alleging (1) deprivation of his civil rights in violation of 42 U.S.C. § 1983; and (2) false arrest and negligence in violation of Kansas law. Before the Court are the parties' cross-motions for summary judgment. Plaintiff moves for partial summary judgment, contending that the undisputed facts establish defendants' liability under § 1983. Defendants move for summary judgment on all of plaintiff's claims. Defendants contend that summary judgment is appropriate with respect to the § 1983 claim because (1) Tomrell was not seized; (2) Morris and Duncanson are entitled to qualified immunity; and (3) Tomrell has presented no evidence that Leavenworth County has any pattern or practice of such conduct as alleged by Tomrell. Defendants contend that summary judgment is appropriate with respect to the state law claims because (1) Tomrell was not "arrested," (2) they owed no duty to plaintiff that would support a claim for negligence; and (3) they enjoy "discretionary act" immunity pursuant to Kan.Stat.Ann. § 75–6104(e).

■■■ Application of the well-established standards for summary judgment is somewhat complicated by plaintiff's failure to comply with Local Rule 206(c). First, the Court cannot reach the merits of plaintiff's motion because he has failed to set forth "undisputed facts" and refer with particularity to portions of the record which establish such facts. This oversight is fatal because it deprives the Court of the uncontroverted facts essential to judgment as a matter of law. Second, plaintiff has disregarded Local Rule 206(c) in failing to specifically controvert defendants' statement of facts in his response to defendants' motion for summary judgment. Accordingly, plaintiff has admitted those facts for purposes of this motion. *See Money v. Great Bend Packing Co.,* 783 F.Supp. 563, 566–67 (D.Kan.1992). The Court therefore turns to the merits of defendants' motion for summary judgment.

*Discussion*

A. *Standard of Review*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court considers all evidence and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). The nonmoving party, however, "may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990). Thus, summary judgment may be entered "against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). As to those claims for which defendants Morris and Duncanson properly have raised the defense of qualified immunity, the Court applies the summary judgment standard only after first discerning whether the plaintiff has pleaded facts or allegations sufficient to establish that the defendants violated clearly established law. *See Langley v. Adams County,* 987 F.2d 1473, 1476 (10th Cir.1993); *Woodward v. City of Worland,* 977 F.2d 1392, 1396–97 (10th Cir.1992).

**B.** *Section 1983*

■ Because § 1983 creates no substantive rights, the first step in resolving any § 1983 claim is to identify the constitutional protection allegedly violated. *See Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979). In this case, plaintiff contends that defendants violated his rights under the Fourth Amendment when they refused to let him leave the City Jail without his prisoner, *i.e.* by imposing a condition on his total freedom of movement.

The Court disagrees.

First, plaintiff was admittedly free to leave (albeit with his prisoner) and as a matter of law, defendants did not "seize" him. *See Florida v. Bostick,* 501 U.S. 429, ——, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991); *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). While plaintiff complains that he was not free to leave *with* the prisoner, because of the municipal court order and the order of his superior officer, defendants are not responsible for restraints imposed by third parties. *See INS v. Delgado,* 466 U.S. 210, 215, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984).

Even if plaintiff were seized, such seizure was manifestly reasonable under the circumstances. At most, plaintiff spent two hours at the County Jail, on his regular paid duty shift, while superior officers debated whether he should be allowed to abandon a prisoner committed to his legal custody.[3]

■ Finally, defendants Morris and Duncanson are entitled to qualified immunity. Although the contours of the Fourth Amendment are well known generally, the case law falls far short of "clearly establishing" in this context (1) that the limitations placed on plaintiff's liberty constituted a seizure or (2) that those limitations were unreasonable un-

der the circumstances.[4] *See Franz v. Lytle,* 997 F.2d 784, 787 (10th Cir.1993).

■ With respect to plaintiff's § 1983 claim against the County, that claim also fails for lack of any underlying constitutional violation, *see Hinton v. City of Elwood,* 997 F.2d 774, 782–83 (10th Cir.1993), and for failure to establish the existence of any policy or custom which could have caused the injury alleged. *See City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989).

**C.** *State Law Claims*

Although the Court has dismissed all of the federal law claims over which the Court exercised original jurisdiction, the Court elects to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c). Like the foregoing claims, however, plaintiff's state law claims are easily disposed.

■ First, because plaintiff was always free to leave with the prisoner, his false imprisonment claim fails for lack of "confinement." Plaintiff's ability to leave with his prisoner also constituted a reasonable means of escape from any "confinement" to which defendants subjected him. *See* Restatement (Second) of Torts § 36 (1965). Second, plaintiff's negligence claim fails because he does not identify any conduct inconsistent with the officers' duty to exercise ordinary care. *See Allen v. Board of Comm'rs,* 773 F.Supp. 1442, 1453 (D.Kan.1991). Finally, the Court believes that defendants clearly were exercising discretion involving an element of policy formulation unhampered by legal rule and therefore are entitled to discretionary function immunity pursuant to Kan.Stat.Ann. § 75–6104(e) (1989 & Supp.1992); *see Burgess v. West,* 817 F.Supp. 1520, 1525 (D.Kan. 1993); *Allen,* 773 F.Supp. at 1454.

---

**3.** Although plaintiff claims that the County wrongfully refused to take the prisoner, the parties agree that the County never accepted custody. Thus, plaintiff's departure without the prisoner would have constituted an abandonment of custody of the prisoner.

**4.** Arguably, any limitations on plaintiff's freedom sound more in the nature of a deprivation of liberty under the Fourteenth Amendment than a

seizure under the Fourth Amendment. Plaintiff does not claim that defendants deprived him of any liberty, however, without due process of law. Indeed, plaintiff has made no effort to specify what process might have been "due" under the Fourteenth Amendment, and has otherwise insisted on Fourth Amendment protection for his alleged right to freedom of movement in this case.

**IT IS THEREFORE ORDERED** that defendants' *Motion for Summary Judgment* (Doc. # 46) be and hereby is **SUSTAINED** and plaintiff's *Motion for Summary Judgment* (Doc. # 36) be and hereby is **OVERRULED.**

**IT IS FURTHER ORDERED** that defendants' *Motion to Dismiss* (Doc. # 16) be and hereby is **OVERRULED** as moot.

**IT IS SO ORDERED.**